## PULLMAN'S PALACE CAR COMPANY *v.* MARTIN.

1. Without reference to the law regulating the liability of a sleeping-car company for the loss of property by a passenger occasioned by the *negligence* of its employees, it is clear that in a case where the jury could reasonably infer from the evidence that the property lost by a passenger consisted of a sum of money and such articles as she might for her personal convenience and adornment have appropriately carried with her in the car, and that the same was *stolen by an employee* of the company while the passenger was under his protection, the company is liable.
2. The verdict is supported by the evidence, and the court did not abuse its discretion in refusing a new trial.
3. Where a proper and complete brief of evidence was presented to the judge for his approval, it was bad practice for him, on motion of the opposite party, to require a number of interrogatories and the answers to same, all of which were fully covered by the brief, to be attached to such brief; and when it plainly appears that doing so was entirely unnecessary, the cost of bringing such superfluous matter to this court will be taxed against the party at whose instance it was added to the brief.

January 28, 1895.

Action for damages. Before Judge MacDonell. City court of Savannah. February term, 1894.

BARROW & OSBORNE and JACKSON & LEFTWICH, for plaintiff in error.

WILLIAM D. HARDEN and WEST & McLAWS, *contra.*

ATKINSON, Justice.

1. According to the view we take of the questions made in this case, it is unnecessary for us to determine whether in Georgia a sleeping-car company should be held to the same degree of diligence as is imposed upon an innkeeper, nor whether it shall be adjudged to be a common carrier; nor is it necessary specially to define its appropriate position among that class of persons denominated bailees for hire. Whether we treat this defendant as a common carrier of passengers, or treat it as an innkeeper, or treat it as a simple lodging-house keeper, hiring its space for an agreed consideration for sleeping apartments for a determinate period, it would be responsible for personal jewels and belongings of a passenger appropriate to his or her social position and financial standing, carried by such passenger while traveling thereon, and for his or her convenience, comfort or personal adornment, to the extent at least of making good to such person any loss resulting from a theft of such property by its own employees while such person was under their protection. It guarantees at least that, while enjoying the comforts afforded by the car of the defendant, a person traveling thereon shall not be robbed by its employees. To what extent and under what circumstances it might be liable for the wrong-doing of other persons, we do not think is involved in this case, and do not at present undertake to decide. By her declaration the plaintiff alleged, that on or about March 2d, 1892, she was a passenger for hire on defendant's sleeping-car "America" from Chattanooga to Macon;

that by the contract of hiring it undertook to use reasonable and proper diligence in guarding and protecting her from loss by theft while she slept during the usual hours of sleep in the berth assigned to her on the car by defendant; that she had with her reasonable money and jewelry, to wit: money to the amount of $35.00, and jewelry of the value of $700.00; that upon retiring for the night upon the sleeper, she put the money and jewelry in a satchel and placed the satchel between her person as she lay in her berth and the wall of the car, and then went to sleep; that defendant so negligently guarded and protected her while she was thus sleeping, that, through its negligence, some person unknown to her, while she was asleep and during the night, took the money and jewelry from the satchel without her knowledge, and stole it, etc.

2. According to the evidence reported in the record, plaintiff was a passenger upon defendant's car, and on the evening before she lost her property, in conversation with another passenger with whom she was traveling, she casually so exposed her pocket-book containing the money and jewelry sued for, as that the porter of the car saw it in her possession and saw her place it in a satchel. Upon retiring, this satchel was placed in the berth beside her, between herself and the wall of the car. She testified that she had not removed the pocket-book from the satchel, but upon retiring, went to sleep and so remained until the next morning about daylight or before; that about this time she was awakened by a sensation as of some person intruding in her berth; that she awoke and recognized the head of the porter, a servant of the company, inside the curtain of her berth; that she asked what he meant, and when ordered to close the curtain, he said he had come to call her for breakfast at Macon, Georgia; that she, however, went to sleep again—does not know how long she slept, and

then got up and dressed before she reached Macon; that when she finally awoke, the satchel was at her feet and open; that she closed the satchel, and several hours thereafter reopened it to get some money with which to purchase fruit, and found that the money and jewelry were gone; that she called the attention of the conductor to it, and search was made, but it was impossible to recover the money and jewelry.

The conductor testified, that both the porter and himself were on watch until all the berths were made down, which was about 10:30 P. M.; that the porter then retired, and he remained on watch until 3:00 A. M., at which time he awoke the porter, who went on watch and he then retired; that he arose between 6:30 and 7:00 A. M.; that from the time the berths were made down until he retired, he was constantly watching the aisle between the berths to see that the occupants thereof were not disturbed in their persons or property while they slept; that the plaintiff arose about 7:00 o'clock, but did not report her loss until about 11:30 A. M.; that she did not say where her satchel had been during this interval—whether she had left it unguarded for all or any portion of the time or not.

The porter testified, that he did not know anything of the ear-rings or money; that the conductor and himself were both on watch until the berths were made down, and then he went to bed and the conductor remained on watch until 3:00 A. M.; that at that hour the conductor awoke him, and he stood watch alone until the passengers arose the next morning; that he kept a strict watch, did not go to sleep any time, and was not out at any of the stations; that neither the plaintiff nor her property was interfered with by any one while he was on watch; that the other door was not locked, because it was not necessary, as he was on watch all the time and could see it; that the car was an old one, and

there was nothing to prevent him from seeing from one door to the other; that he did not go inside the curtain, nor put his head, his arms or his shoulders inside the curtain before plaintiff got up; that he did not see her take her pocket-book out of her satchel at any time during the trip or show her ear-rings or money to any one; that he remained on watch until the conductor and passengers got up in the morning, and then the conductor shared his watch; that he was in the car the entire time, but was in bed and asleep between one and three A. M.; that while on watch he was constantly awake and on duty guarding the car, the property in it, and the passengers, and no one could have disturbed the passengers or their property without his seeing it; that he blacked shoes that night at the end of the aisle in the body of the car, where he had a full view through the aisle; that this was an old style car, and had no smoking-room in it; that in making down the berths he closed both sashes of the windows; that the windows all had fastenings to prevent their being raised from the outside; that there was no conversation between the plaintiff and himself; that in waking the passengers, if she was not already up, he woke her in the same manner as he awoke other passengers, by calling, and, if no answer was made, by putting his hand on the berth curtains and pushing them in until they touched her so as to arouse her; that this was always the way passengers were waked up.

That this passenger lost her jewelry and money, and that she lost them while a passenger in this car, are both facts which may be taken as established beyond controversy by the evidence. The plaintiff's testimony places the porter, the servant of this defendant, in such a situation as that he might easily have purloined her property. According to his own statement, it was not necessary for him to have put his head inside her berth.

According to her statement, he did put his head inside of her berth, and thereafter she found her satchel open and her purse gone. These circumstances, even in the face of a denial by the porter, would have furnished strong inferential evidence that he was the man who appropriated these goods. His guilt, we think, is practically demonstrated by his own testimony and that of the conductor. According to the conductor, he was constantly on guard from the time the passengers retired the evening before until three o'clock in the morning; and, if his testimony be true (and it is not disputed by any one), it would have been impossible for any person without his knowledge to have intruded upon the privacy of this passenger during this interval and stolen her property. According to the testimony of the porter, from three o'clock A. M. until the time when the passengers arose, he was constantly on guard for the purpose of protecting the persons and property of the passengers against the depredations of other people; he was in a position where he could have seen and would have seen any person who intruded upon the passengers in that car, and no such thing was done. So that, according to his own statement and the statement of the conductor, it would have been impossible for any person other than one of these two to have robbed this plaintiff between the hour when she retired and the hour when she arose. But since she was robbed, and since, as we have seen, it would have been impossible for any person other than one of these two to have robbed her, then the inference is that she was robbed by the one or the other of these employees; and for the larceny of either the company would be responsible. We think the evidence of this plaintiff established beyond serious controversy that the porter intruded his head into her berth and stole her property. He was the person identified by the passenger as having intruded upon her privacy. According

to his testimony, at the time she says it was done, it would have been impossible for any person other than he to have entered unobserved. This was the view the jury might have taken of this case in the court below. The only reasonable conclusion to be drawn from this evidence is, that the servant of the defendant, whose duty it was to guard the person and property of this passenger while she slept, purloined the chattels sued for; and we therefore think that, without reference to the liability imposed upon the company for injuries resulting from the negligence of its employees, the jury were justified in finding against it because of the larceny committed by its servants.

3. It is unnecessary to discuss, further than is therein stated, the question of practice referred to in the third head-note to this opinion.

Let the judgment of the court below be    *Affirmed.*