## WALDROP v. WOLFF & HAPP.
## WOLFF & HAPP v. WALDROP et al.
## HAYES v. WOLFF & HAPP.
## WOLFF & HAPP v. HAYES et al.

1. When the evidence is conflicting, the judgment of the trial judge refusing to grant a new trial will not be reversed, unless some error of law was committed at the trial.

2. Grounds of a motion for a new trial in which error is assigned upon the admission of evidence will not be considered by this court, when the evidence objected to is not set forth therein either literally or in substance, nor attached to the motion as an exhibit.

3. The refusal to hear a demurrer to, or motion to dismiss, a petition can not be properly made the subject of complaint in a motion for a new trial.

4. The extract from the charge complained of in the motion for a new trial was not erroneous.

5. When two persons against whom an action of trover is brought unite in executing an eventual condemnation-money bond, in which they appear as principals and a third person appears as surety, all binding themselves "jointly and severally" to pay the eventual condemnation-money in the case, the two principals are each surety for the other, as well as a cosurety with the surety.

6. When an action of trover is brought against two persons, and they unite in one eventual condemnation-money bond, with another as surety, the failure of the plaintiff to recover against one of the defendants does not discharge the surety.

7. The surety on a bond given by the defendant in an action of trover for the eventual condemnation-money is bound by the judgment against the defendant, and can not after judgment raise any question which could have been raised by the principal before judgment.

8. The court did not err in overruling the motion for a new trial, nor in entering judgment on the eventual condemnation-money bond against the surety, but did err in refusing to enter judgment on such bond against the defendant in the suit in whose favor a nonsuit was granted, as, notwithstanding such nonsuit, the defendant was liable on the bond as cosurety with the surety thereon; and direction is given that the judgment be so amended as to render the defendant liable on the bond in this capacity.

9. If the clerk of a trial court transmits to this court portions of a record which are not specified in the bill of exceptions, or sends two or more copies of a portion of the record when only one copy was specified, he is not entitled to a judgment for the cost of transmitting such surplus record, against any party to the suit, unless such transmission was made at the instance or request of the party or his counsel.

Argued January 7, — Decided February 4, 1902.

Trover. Before Judge Candler. Thomas superior court. March 13, 1901.

*W. C. Snodgrass* and *D. H. Pope,* for Waldrop et al.

*Hardeman, Davis, Turner & Jones, Hammond & Hammond,* and *Arthur Patten,* contra.

COBB, J.    Wolff & Happ, a mercantile copartnership, brought an action of trover against S. A. Waldrop and R. L. Bryans, to recover certain described personalty.    The defendants gave the usual eventual condemnation-money bond, with S. L. Hayes as security, and filed their defense to the action, which in effect denied that title to the property described in the petition was in the plaintiffs. At the trial a nonsuit was granted as to Bryans, and a verdict was returned in favor of the plaintiffs against Waldrop.    The court entered judgment on the bond against Waldrop as principal and Hayes as security.    Waldrop made a motion for a new trial, which was overruled.    The case is here upon four bills of exceptions, which for convenience will be referred to as Nos. 1, 2, 3, and 4. Waldrop is the plaintiff in error in No. 1, and error is assigned therein upon the refusal of the court to grant a new trial.    Wolff & Happ are the plaintiffs in error in No. 2, and error is assigned in this bill of exceptions upon certain rulings made by the judge during the progress of the trial, as well as upon others made after the verdict was rendered.    Hayes sued out No. 3, and he assigns error on certain rulings made by the court after the verdict was rendered, which he claims affected his right as surety on the eventual condemnation-money bond.    In No. 4 Wolff & Happ are the plaintiffs in error, and the questions raised therein are similar to those made in No. 2, which was also sued out by them.    As to some of the questions raised in bills of exceptions Nos. 2 and 4, they may be treated as merely cross-bills of 1 and 3, respectively; but as to other questions they are in reality main bills of exceptions, and raise questions which could have been properly brought to this court, even if no bills of exceptions had been sued out by either Waldrop or Hayes.    The various assignments of error in the different bills of exceptions raise numerous questions, but under the view we have taken of the case it is not necessary that all of these questions should be decided.    Such of them as we deem it necessary to determine in order to dispose of the entire case will be dealt with in the opinion which follows.

1. It was insisted that the court erred in refusing to grant a new trial, for the reason that the verdict was unsupported by the evidence.    The theory of the plaintiffs was that the property for which

the suit was brought had been sold by them to the defendant Waldrop upon the faith of certain representations which he had made to a mercantile agency, that these representations were false, and that they, after discovering this fact, had elected to rescind the contract of sale and had brought the suit in consequence of this election to recover possession of the property sold. The theory of the defendant's case was that the property had been purchased in good faith, that even if the representations made to the mercantile agency were false, the plaintiffs had not acted upon them, and that therefore the sale was not fraudulent and the plaintiffs had no ground for rescission ; and that, in addition to this, the plaintiffs had, prior to the institution of the action of trover, elected to treat the sale as valid, this election being manifested by an attachment which had been sued out at their instance against the defendants and levied upon the property as their property, and by an equitable petition which had been filed in aid of such attachment. The reply of the plaintiffs to this contention of the defendants was, that all this was done before they discovered the fraud which had been perpetrated upon them, and that within a reasonable time after the discovery of the fraud they had dismissed the attachment and equitable petition and instituted the present action, thereby electing to treat the sale as void on account of the fraudulent conduct of the defendants. There was evidence which authorized the jury to adopt either view of the matter ; and while it can not be said even that the evidence was so strong as to produce a decided preponderance in favor of the plaintiffs, still the verdict of the jury was amply supported. Under such circumstances, after the verdict has been approved by the trial judge, this court will not interfere with his discretion in overruling the motion for a new trial, unless some error of law was committed at the trial which will require a reversal of the judgment refusing a new trial.

2. The motion for a new trial contains twelve grounds. In seven of them the movant sought to raise questions growing out of the admission of testimony which had been objected to by him on the trial. In none of these grounds was the evidence objected to set forth either literally or in substance, or attached to the motion as an exhibit. Such being the case, this court can not consider the assignments of error made in these grounds. *Redding* v. *Lennon,* 112 *Ga.* 491 (1); *Allen* v. *Harris,* 113 *Ga.* 107 (1); *Smith* v. *Black,* Id. 166 (2); *Bowdoin* v. *State,* Id. 1150.

3. One ground of the motion complains that the court erred in refusing to hear, either before going into the trial, or at any stage thereof, a general demurrer or motion to dismiss, which had been filed by the defendant Waldrop. This court·has repeatedly ruled that the overruling of a demurrer to a petition can not be properly made a ground of a motion for a new trial. *Willbanks* v. *Untriner*, 98 *Ga.* 801 (1); *Shuman* v. *Smith*, 100 *Ga.* 415 (1); *Southern Railway Co.* v. *Cook*, 106 *Ga.* 450 (1). The refusal of the court to hear a demurrer or motion to dismiss a case is in its effect, so far as the defendant is concerned, the same as if the demurrer or motion to dismiss had been overruled; and the same reason which would prevent an assignment of error on the one ruling from being made a ground of a motion for a new trial would make an assignment of error in this way on the other improper.

4. Complaint is made in one ground of the motion that the verdict was contrary to a specified portion of the judge's charge, and in another ground it is alleged that a new trial should be granted because the evidence shows that the plaintiffs had not given credit to Waldrop on the faith of any statements made by him to the mercantile agency or the plaintiffs. These assignments of error are in effect that the verdict is contrary to evidence, and what has been said above with reference to the general grounds of the motion for a new trial disposes of these grounds. Only one ground of the motion for a new trial remains to be considered. In that ground complaint is made that the court erred in charging the jury as follows: ." You will consider the time when such statements were made, and how much time elapsed between the time of the making of the sale and the time of making the statement to the agency. I charge you that the law does not undertake to fix any particular time, sixty days, thirty days, nor any other time, but leaves it to you to decide whether the credit was given under faith of the statement and as to whether such statement was made contemplating the purchases in question, and thus became fraudulent." There does not seem to us to be any error in this charge, as it seems to be in substantial accord with the general rule laid down in the case of *Newman* v. *Claflin*, 107 *Ga.* 89, 95, where Mr. Justice Lewis in the opinion said: " No arbitrary rule can be fixed defining what lapse of time shall expire after the representation is made, before it can be said the party did not act upon it to his injury. Of course

the longer the interval, the weaker may be the case that makes such representation the foundation for a rescission, and the more difficult it may be to prove or establish the fraud based upon such misrepresentation; but all these are matters for consideration by the jury."

5. After the verdict against Waldrop had been published, counsel for plaintiffs moved to enter judgment on the eventual condemnation-money bond against Waldrop as principal,.and Bryans and Hayes as securities; and upon objection by the attorney who represented Bryans and Hayes, the court overruled this motion, and directed judgment to be entered against Waldrop alone as principal, and Hayes as security, thereby releasing Bryans from all liability. To this ruling the plaintiffs excepted. The court erred in not entering judgment against Bryans as a surety on the bond. The general rule is that joint obligors are sureties for each other. 1 Brandt, Sur. & Guar. (2d ed.) § 38. This rule has been applied by this court to defendants who unite in an appeal bond. *Lewis* v. *Maulden*, 93 *Ga.* 758. In that case three persons were sued as defendants in the county court, and judgment was there rendered against all of them. All of the defendants appealed, uniting in one appeal bond, and giving another person as security. In the superior court a verdict was rendered against one of the defendants only, and two of them were released from liability upon the verdict on the original cause of action. It was held that, although they were released as principals, they, together with the surety on the appeal bond, were all sureties for the principal who was held bound as such. If this rule is applicable in the case of an appeal bond, we see no good reason why it should not apply in the case of an eventual condemnation-money bond given by defendants jointly sued in an action of trover and who unite in a bond with a surety, in which they bind themselves "jointly and severally" to pay the eventual condemnation-money in the case. Bryans and Waldrop need not have united in a common bond when they were arrested on the bail process, each one having the right and privilege of giving a separate bond, if he had seen proper; but having chosen to unite in a common bond, they became subject to the general rule above referred to, that joint principals in a bond are sureties for each other.

6. After the verdict against Waldrop had been published, Hayes, the surety on the eventual condemnation-money bond, objected to

any judgment being entered against him on the bond, for the reason that, Bryans having been relieved of all liability as principal in the case by the judgment of nonsuit, and having been relieved from all liability as a cosurety with him by the judgment of the court refusing to enter a judgment against him, Hayes's risk as surety was increased, and he was therefore discharged from liability on the bond. As we have reached the conclusion that the court erred in releasing Bryans from liability as a surety for Waldrop and for Hayes, a judgment will be entered against Bryans in this capacity, and consequently Hayes has no further ground of complaint with reference to the ruling of the judge as to this matter. It is only necessary, therefore, to consider, under this assignment of error, whether Hayes was released by the fact that the suit was originally brought against Waldrop and Bryans and the plaintiffs failed to obtain a judgment against Bryans. The code provides that when the defendant in an action of trover is held to bail, the officer serving the process must take a bond conditioned " for the forthcoming of such personal property to answer such judgment, execution, or decree as may be rendered or issued in the case, and such security shall be bound for the payment of the eventual condemnation-money." -Civil Code, § 4605. The bond taken in the present case was in substantial compliance with this section; the condition being, that should Waldrop and Bryans "produce, or cause to be produced, and forthcoming, said articles of merchandise, to answer the judgment that may be made in said case, and shall well and truly pay the eventual condemnation-money, then this bond to be void." This exact question does not seem to have been heretofore presented to this court. No case decided by it is cited on the brief of counsel, and we have been able to find none in our investigations. Other courts have, however, dealt with this and similar questions; and the ruling of the learned judge who presided at the trial is amply supported by respectable authority, which we think should be followed, in the absence of any ruling to the contrary by our own courts. In the case of Newell v. Norton, 3 Wall. 257 (1), it was held that if a libellant in the admiralty have originally proceeded against a vessel, master, owners, and pilot, the libel may be amended so as to apply to the vessel and master only; and that such an amendment, neither increasing nor diminishing their liability, will not discharge the sureties to the usual bond given on release of a vessel seized by process of the

admiralty.   In the opinion the following language is quoted from King *v*. Holland, 4 Term, 459: "Every person bailing such property is considered as holding it subject to all legal dispositions of the court."   We quote the following headnote from Leonard *v*. Speidel, 104 Mass. 356: "In an action against A., B. and C., the rendering of judgment against A. and B. only, and for. C., does not exempt sureties from liability on a joint and several bond given by them with A., B. and C. as principals, to dissolve the plaintiff's attachment of 'goods and estate of said A., B. and C.,' the condition of which is that 'A., B. and C. shall pay to the plaintiff in said action the amount, if any, which he shall recover therein.'"   In Poole *v*. Dyer, 123 Mass. 363, it was held that the fact that the plaintiffs voluntarily discontinued the suit against one of the defendants did not discharge the surety upon a bond given in language similar to that referred to in the case of Leonard *v*. Speidel.   See also Dalton *v*. Barnard, 150 Mass. 473; Heynemann *v*. Eder, 17 Cal. 434; 2 Brandt, Sur. & Guar. (2d ed.) § 470; 24 Am. & Eng. Enc. Law (1st ed.), 860, n. 3.

The principle deducible from these authorities seems to be that when a bond is given under statutes similar to our bail-trover statute, and the suit is against parties who are bound both severally and jointly to the plaintiff, the purpose of the bond being to secure to the plaintiff either the return of the property or the payment of the eventual condemnation-money in the event he obtains a judgment in the case, the plaintiff is entitled, in the event he recovers in the suit, to a judgment on the bond against any of the persons sued originally in the action, and that inasmuch as the surety upon the bond enters into the contract of suretyship with a full knowledge that the plaintiff may recover against all, or may recover only against some of the defendants sued, he is bound in the event any lawful judgment rendered in the case against any one who was originally sued is not complied with.   The purpose of the bond is to protect the plaintiff and to insure to him the fruits of his recovery against any of the defendants sued, and the undertaking of the surety is to see that the plaintiff is so protected.   The surety enters into the contract with a full knowledge of the fact that the case may be lawfully changed by amendment or otherwise, and when the terms of the statute are as broad as ours, and the bond is a substantial compliance with the statute, as in the present case, the

surety must make good to the plaintiff any lawful judgment rendered in the case against any defendant who was sued. It seems, however, that in those jurisdictions where the plaintiffs may discontinue as to one defendant and summon in another, the discontinuance as to one and the summoning in of another will release the surety on the bond. See cases cited in Poole *v.* Dyer, supra. But wherever the suit is against parties bound both jointly and severally, and the same is lawfully prosecuted to judgment against one of the original defendants, the plaintiff is entitled to a judgment against the surety on the bond, notwithstanding he may have failed to make out a case against one, or any other number, of the defendants originally sued. There is nothing in the case of *McCarter* v. *Turner*, 49 *Ga.* 309, which conflicts with the ruling just made. In that case the suit was brought against two joint and several makers of a promissory note, and the plaintiffs dismissed the action as to one of the defendants and obtained a judgment by default against the other. On a bill filed by the defendant against whom the judgment was rendered, to enjoin the enforcement of an execution, it was held that the dismissal as to the other defendant did not operate as a discharge of the defendant against whom the judgment was rendered. It is stated in the headnote in that case that if the party against whom the judgment was obtained was a principal and the other was a surety, the rule would be different; and Judge Trippe in the opinion gives as a reason for this latter proposition, " that a creditor can not, by voluntarily bringing suit, thus discharge the surety from the necessity of giving [notice to sue], put him at ease and off his guard, and then, after the lapse of a considerable time, it may be after protracted litigation, suddenly, of his own motion, and without notice to the surety, dismiss the action as to the principal and claim the payment of the. debt from the surety." It is apparent that there was involved in this case no question relating to suretyship, and what is. said in the headnote and opinion on this subject was purely obiter. The case of *Howes* v. *Patterson*, 76 *Ga.* 689, was relied on by counsel for Hayes as authority for the proposition contended for by him, that, after the nonsuit had been granted in the case as to Bryans, no lawful judgment could be rendered against Hayes as security on the bond, his undertaking having been to answer for the default of both Bryans and Waldrop jointly, and not for either individually. That was a

case where an attachment was sued out against a partnership composed of three persons, and at the trial the plaintiff, having discontinued as to two of the partners, sought to enter a general judgment against the remaining partner as an individual, and also a judgment upon the bond which had been given to dissolve the attachment. It was held that, as the partnership was sued, there could be no general judgment against any of the partners as individuals, and that therefore there could be no judgment on the bond. There seems to be some conflict in the decisions of this court in reference to the question as to whether in a suit against a partnership a judgment against one only of the partners as an individual can be lawfully rendered. In *Wooten* v. *Nall*, 18 *Ga.* 610, 624, the suit was treated as one against copartners, and the court held that if upon the trial it appeared that one of them was not liable, judgment could be rendered against the other as an individual. In *Francis* v. *Dickel*, 68 *Ga.* 255, it was held that in a suit against partners, where there was a plea of no partnership, which was sustained, if the proof authorized a judgment against one of them as an individual, a judgment binding him in this capacity could be rendered. In the case of *Maynard* v. *Ponder*, 75 *Ga.* 665 (1), the same ruling is made in substance, one of the pleas filed being construed to be in effect a plea of no partnership. The cases just cited were founded upon contract; and a similar ruling was made in the case of *Austin* v. *Appling*, 88 *Ga.* 55 (5), 59, where a suit was brought against three persons as partners for a tort, and there was a plea of no partnership, which was sustained, the evidence authorizing a recovery against one of them, which was allowed. In the case of *Ledbetter* v. *Dean*, 82 *Ga.* 790, it was distinctly held that in an action against a firm as partners, on an account arising from a contract to do certain work, a verdict against only one of the partners, if warranted by the evidence, was sustainable. There does not seem to have been any plea in this case except that of not indebted, and nothing which was equivalent to a plea of no partnership. See also *Price* v. *Bell*, 88 *Ga.* 740. In *Bosworth* v. *West*, 68 *Ga.* 825, it was held that where three were sued as partners on notes executed by one of them, and the existence of the partnership was contested, but the evidence showed that, if there was a partnership, all three of the defendants were members, a verdict against two only, omitting the defendant who made the notes

sued on, was contrary to evidence. It seems, therefore, that the ruling in *Howes* v. *Patterson*, supra, is in conflict with several decisions of this court, some of them rendered before the date of that decision. It is not, however, necessary in the present case to determine which of the decisions dealing with this question are binding, for the reason that the present suit was not a suit against a partnership, but was simply a suit against joint trespassers; and whether the rule laid down in *Howes* v. *Patterson* and similar cases is correct, or whether the rule laid down in the other decisions is sound, it is certainly settled, not only by the code, but by the decisions of this court, that in suits against two or more persons as joint and several contractors, or joint trespassers, other than as partners, if the suit be discontinued by the plaintiff, or dismissed by the court, as to one or more of those sued, the suit may proceed against the remaining defendants, and if a recovery against them is warranted by the evidence, judgment may be rendered against them. See Civil Code, § 5104; *McArdle* v. *Bullock*, 45 *Ga.* 89; *Western Union Tel. Co.* v. *Griffith*, 111 *Ga.* 558-9.

The sureties on a bond given for the eventual condemnation-money in an action of trover, or similar bonds in other legal proceedings, take all the risks that are incident to whatever lawful changes may be made in the proceedings as to parties or otherwise, and a bond which is in effect an undertaking to answer the judgment or decree in a given case binds the surety to answer whatever judgment or decree may be lawfully rendered in that case against one who was a party to the same at the time that the undertaking was entered into by him. In the present case the undertaking of Hayes was to have the property forthcoming to answer whatever judgment was rendered in the case, or to pay the eventual condemnation-money if a judgment for money should be entered; and as a judgment against Waldrop in his individual capacity for a given sum of money was lawfully authorized, Hayes was bound as security for the amount for which the judgment had been rendered against Waldrop. There is an additional reason why in the present case Hayes should not be permitted to raise any question as to the propriety of the nonsuit as to Bryans. He, through his counsel, seems to have invoked the ruling which resulted in the nonsuit, and it would seem that he should not be allowed, at a subsequent stage of the case, either to question the soundness of the rulings thus

invoked, or to set up that he was in any way prejudiced thereby. See, in this connection, *Luther* v. *Clay*, 100 *Ga.* 236 (1), and cases cited.    While Hayes had no right to appear at the stage of the case at which the motion to nonsuit was made (see *Holmes* v. *Langston,* 110 *Ga.* 869), he seems to have been permitted by the court to appear and participate in the trial; and under such circumstances the same principle which would preclude a party from afterwards, in a subsequent stage of the case, questioning a ruling made in his favor would seem to prevent him from calling in question the correctness of the judgment of nonsuit.

7. When judgment was about to be entered upon the eventual condemnation-money bond, in addition to the reason above referred to why the judgment should not be entered against Hayes as surety, it was contended that, as it appeared from the evidence in the trial of the case that at the time of the making and filing of the bail affidavit by the plaintiff neither Waldrop nor Bryans was in possession of the property, and this was known to the plaintiffs, the surety was not liable on the bond.    In other words, the point is made that the bail affidavit was false in so far as it stated that the defendants were in possession of the property, and that for this reason the surety on the eventual condemation-money bond was not liable.    It is too well settled now to admit of any discussion, that a surety on an eventual condemnation-money bond in an action of trover is bound by the judgment against his principal, and will not be heard after judgment to raise any question which could have been raised by his principal before judgment.    *Jackson* v. *Guilmartin,* 61 *Ga.* 544; *Crawford* v. *Jones,* 65 *Ga.* 523 (2); *Thomas* v. *Price,* 88 *Ga.* 533 (2); *Hogans* v. *Dixon,* 105 *Ga.* 171 (1); *Holmes* v. *Langston,* 110 *Ga.* 869.    In the case last cited it was said: "After becoming securities on the bond they must remain silent witnesses to the conflict between the parties to the suit, standing ready to fulfil at the end of the litigation the obligation they have undertaken — to pay the judgment if the plaintiff elects to recover a money verdict, or deliver the property or pay damages in lieu thereof if an alternative verdict is rendered."

8, 9. The foregoing deals with all of the questions raised in the first bill of exceptions, in which Waldrop was the plaintiff in error, and the third bill of exceptions, in which Hayes was the plaintiff in error.    The judgment on each of these bills of exceptions must

be affirmed. On the second bill of exceptions, in which Wolff & Happ are the plaintiffs in error, the judgment must be reversed, because the court erred in holding that Bryans was not bound as a surety on the eventual condemnation-money bond; and direction is given that judgment be entered against Waldrop as principal and Bryans and Hayes as sureties on the eventual condemnation-money bond. There are other assignments of error in these bills of exceptions, but, under the judgment rendered by us, it is unnecessary to determine them. Complaint is made that the court erred in granting a nonsuit as to Bryans. As the effect of our judgment is to make Bryans severally as well as jointly with Hayes liable for the entire amount recovered by the plaintiffs, they have no reason to complain of the granting of the nonsuit as to him. While his liability, so far as Hayes, the surety, is concerned, is different, his liability to the plaintiffs is practically the same as if judgment had been recovered against him as a principal. Error is also assigned upon judgments of the court refusing to strike certain demurrers of the defendants, refusing to strike the answers, allowing certain amendments to the answers, and overruling a motion to direct a verdict against the defendants, because answers had not been duly filed. As the effect of our judgment is to affirm the finding against Waldrop, and to make Bryans liable to the same extent he would have been if a verdict had been returned against him, it is unnecessary, so far as the plaintiffs are concerned, to determine any of these questions. The fourth bill of exceptions seems to be a duplicate of the second bill of exceptions, and there was really no necessity for suing out this bill of exceptions. For this reason the writ of error on this bill of exceptions is dismissed; the only point made therein which was necessary to be determined in the present case having been ruled in favor of the plaintiffs in error therein on the second bill of exceptions.

When this case was heard in this court counsel for Wolff & Happ stated that the clerk, in transmitting the record in the several cases, had in some instances transmitted portions of the record which were not specified, and in other instances had sent up more than one copy of a portion of the record which was specified, when only one copy was specified, and asked that in no event should any costs be taxed against their clients for any part of such unnecessary record. We have not examined the record for the purpose of determining what

portion thereof was improperly transmitted to this court, and do not deem it' necessary to make any direction in reference to the matter. Of course the clerk is not entitled to costs for transmitting any portion of the record which was not specified, or which was unnecessarily copied twice; and upon a motion to tax costs in the superior court the parties will have a right to be heard on this question, and if it should appear that none of the parties nor their counsel were responsible in any way for the act of the clerk in transmitting the surplus record, none of them should be compelled to pay for the same. See, in this connection, *Western Union Tel. Co.* v. *Hill,* 86 *Ga.* 500 (3); *Pullman's Palace Car Co.* v. *Martin,* 95 *Ga.* 314 (1).

*Judgments on bills of exceptions designated above as Nos. 1 and 3 affirmed; on bill of exceptions designated as No. 2 reversed with direction; writ of error on bill of exceptions designated as No. 4 dismissed with direction. All the Justices concurring.*