## JOHNSON, receiver, *v.* LONGLEY.

1. The mere promise by the holder of a promissory note, made to a surety thereon, without consideration, to the effect that the creditor would proceed forthwith against the principal debtor, standing alone, would be a nudum pactum, and would have no effect upon the obligation of the surety. If, however, the surety is induced by such an assurance to forego any means of indemnity or protection, an estoppel will arise to the extent of the resulting loss, and the surety will be discharged to that extent.

(*a*) The provision of section 3546 of the Civil Code (1910), which authorizes a surety, at any time after the debt is due, to give notice in writing to the creditor to proceed to collect the debt out of the principal, stating the county of the principal's residence, and which declares that if the creditor refuses or fails to commence an action for three months after such notice, if the principal is within the jurisdiction, the surety shall be discharged, is a statutory right given to the surety upon the terms specified; and a parol notice or request to the creditor to bring suit, however urgently made, will not operate as a compliance with the statute, or of itself have the effect to discharge the surety.

2. The evidence on the subject of the mortgage and deed taken by the surety, their purpose and recitals, and the makers thereof, is so meagerly and unsatisfactorily set out in the brief of evidence that it is impracticable to determine whether the charges of the court in regard to them were accurate or not.

DECEMBER 17, 1914.

Complaint. Before Judge Fite. Whitfield superior court. October 24, 1913.

J. E. Johnson, receiver of the Pendley Lumber Company, brought suit against L. L. Bishop and J. A. Longley on a promissory note dated February 17, 1909, and due one day after date. Bishop made no defense. Longley pleaded, that he was a surety, and had been discharged by the conduct of the holder of the note and his attorney; that he informed them that he did not wish to offend Bishop by giving a written notice to sue, as provided by the statute, but that he wanted them to proceed to make the money at once; that the plaintiff's attorney assured him that the plaintiff would bring suit immediately; that the surety would have given written notice but

for this assurance; but that suit was not brought to the next term of court, which was held in July following the conversation, nor until the following March; that if suit had been brought at the July term, and no defense had been made, judgment could have been obtained at the October term; and that certain property belonging to the debtor was destroyed by fire immediately after the adjournment of the October term of the court. There was evidence showing that the surety took a mortgage upon the property referred to, and also a deed; but the evidence contained in the record is meager as to their contents or consideration. It appeared that the mortgage was given by another person than the principal debtor, but it is not stated who executed the deed. A verdict was rendered for the defendant. The plaintiff moved for a new trial, which was refused, and he excepted.

*C. N. King* and *W. E. Mann,* for plaintiff.   *Maddox, McCamy & Shumate* and *J. A. Longley,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.)

1. Section 3544 of the Civil Code (1910) reads as follows: "Any act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk, or exposes him to greater liability, will discharge him; a mere failure by the creditor to sue as soon as the law allows, or negligence to prosecute with vigor his legal remedies, unless for a consideration, will not release the surety." This is a codification of the general rule. While the language is broad, yet there is a distinction between certain things which will operate to discharge a surety in whole and others which will only discharge him in part; and this distinction is recognized in our decisions. As illustrations of this difference, a material change in the contract between the creditor and the principal, or (it has been said) even an immaterial change if the surety has contracted with reference to the provision, will discharge the latter wholly. An agreement for a consideration to extend the time for payment, without the consent of the surety, is typical of this class of cases. Again, there are cases of injuries arising collaterally and not affecting the contract itself, where the discharge is only to the extent of the loss or injury; and if that be not as great as the liability of the surety, then pro tanto. These cases most commonly have arisen where the creditor owed a duty to the surety dependent upon equitable principles—as, to have collateral

securities, or certain property which had been levied on or was held by the creditor subject to the debt, applied to the payment thereof, and where there was a breach of the duty—as, by surrendering or misapplying such collaterals or property.

In *Whitaker* v. *Kirby,* 54 *Ga.* 277, the holder of a promissory note, believing it was paid off in a trade he supposed he had made with the principal, so informed the surety, who knew nothing to the contrary for five years, when suit was brought on the note. This court held that the conduct of the holder discharged the surety. In *Lumsden* v. *Leonard,* 55 *Ga.* 374, it was held that the levy on cotton of the principal debtor under an execution against him and the surety, and the subsequent delivery of the cotton to the principal by the sheriff, discharged the surety to the extent of the value of the cotton. See also *Jones* v. *Hawkins,* 60 *Ga.* 52.

In 2 Hare & Wall. Am. Lead. Cas. 480, 481, it is said: "A promise to look solely to the creditor [debtor?], or a promise to proceed forthwith against him, is, when standing alone, a nudum pactum that can have no effect on the obligation of the surety. And this is equally true of an allegation that the debt has been paid and that the surety will have no further trouble. When, however, the surety is induced by such an assurance to surrender the securities which he has received from the principal, or to forego any means of indemnity or protection, an estoppel will arise to the extent of the resulting loss. The rule was laid down in Baker *v.* Briggs, 8 Pick. 128 [19 Am. D. 311], and again in Harris *v.* Brooks [21 Pick. (Mass.) 195] and Carpenter *v.* King [9 Metc. (Mass.) 511], and has been applied in several other instances. The Bank *v.* Klingensmith, 7 Watts [Pa.], 523; Hickok *v.* The Bank, 35 Vermont, 476; Wilson *v.* Green, 25 Id. 450 [60 Am. D. 279]."

In *Mathews* v. *Everett,* 84 *Ga.* 472, 476 (11 S. E. 135), it was said: "Though a mere assurance to the surety that he is exposed to no further liability for the debt will not protect him from a subsequent change of purpose on the part of the creditor, yet if such assurance has resulted in producing positive injury, it will have that effect to the extent of such injury." In *Bullard* v. *Ledbetter,* 59 *Ga.* 109, the sureties on a rent note notified the holder that their principal was removing enough cotton from the rented premises to pay the note, and called upon him to distrain; and the holder promised the sureties to do so, and said that he would collect the

note from the principal, and would not look to them at all for the money. He failed to distrain, and suffered the property to be taken away, and the sureties were ignorant of it for more than a year, and were induced by that assurance to forego legal proceedings to make the money out of the cotton, and were thus damnified to the full value of the note, the principal being insolvent at the time. It was held that the sureties were discharged. The rule laid down in 2 Am. Lead. Cas., supra, was quoted with approval. It will be noted that the injury to the sureties was equal to the amount of the note on which they were liable. Had it been less, the discharge would have been pro tanto. *Lewis* v. *Armstrong,* 80 *Ga.* 402 (7 S. E. 114) ; *Griffeth* v. *Moss,* 94 *Ga.* 199 (21 S. E. 463) ; *Montgomery* v. *Martin,* 94 *Ga.* 219 (21 S. E. 513) ; *Barrett* v. *Bass,* 105 *Ga.* 421 (31 S. E. 435) ; *Ward* v. *McLamb,* 118 *Ga.* 811 (45 S. E. 688) ; Lowe *v.* Reddan, 123 Wis. 90 (100 N. W. 1038, 3 Ann. Cas. 431, and note) ; New Hampshire Savings Bank *v.* Colcord, 15 N. H. 119 (41 Am. D. 685).

In the case at bar it was contended by the surety, that, about May 1, 1911, he informed the creditor and the latter's attorney that he did not wish to give the written notice to sue the principal debtor, as provided by a statute, in order not to offend the principal debtor, but wished them to bring suit, which they agreed to do; that he would have given the written notice except for this promise; that they did not bring suit to the next July term of court, as could have been done, but delayed to do so until March, 1912; that, had suit been brought as agreed, a judgment could have been obtained at the October term of court; that the principal debtor was in possession of a sawmill and grist-mill and cotton-gin on a small lot; that the gin was burned in November, just after the superior court adjourned; that, had judgment been obtained at the October term, the property could have been levied on and have been in the hands of the sheriff; and that the surety was informed that the gin was worth $400 or $500. The surety testified that he had received a mortgage from some other person than the principal debtor, and also a deed, from whom does not appear. In the briefs of counsel for defendant in error statements are made as to the contents of the mortgage, but they are not set out in the brief of evidence. The surety contended that he had taken the mortgage and deed on the property as a security, and that he was willing to deliver them to

52

the plaintiff at any time. There was conflicting evidence, but we will deal with the case on the basis of the evidence introduced on behalf of the surety.

By section 3546 of the Civil Code (1910), a surety is authorized, at any time after the debt is due, to give notice in writing to the creditor to proceed to collect the debt out of the principal; and if the creditor refuses or fails to commence an action for three months after such notice, if the principal is within the jurisdiction, it is declared that the surety shall be discharged; but no notice is a sufficient compliance with this section which does not state the county of the principal's residence. A notice in parol to sue, however urgent, will not be a compliance with the statute, so as to work a discharge of the surety. *Souter* v. *Bank of Southwestern Georgia*, 94 *Ga.* 713 (20 S. E. 111); *Timmons* v. *Butler*, 138 *Ga.* 69 (74 S. E. 784). What effect did an agreement on the part of the creditor to sue, and his failure to comply with such agreement, have upon the surety? In *Davenport* v. *State Banking Co.*, 126 *Ga.* 136, 152 (54 S. E. 977, 8 L. R. A. (N. S.) 944, 115 Am. St. R. 68, 9 Ann. Cas. 1000), Presiding Justice Cobb said that only the notice provided by the statute would serve to discharge a surety, if not complied with. He added that there are decisions which hold that, where the surety has requested the creditor to take action for the collection of the debt, which, if taken, would result in its collection from the property of the principal, and the creditor assures the surety that he will do so, and thus induces the surety to forego any means of indemnity or protection to which he might otherwise have resorted, and the creditor fails to redeem his promise, whereby the surety is injured, the surety is released. He added, "But in such cases it is not the mere failure of the creditor to comply with the verbal request of the surety, but his failure to comply with a promise which he made to the surety, and upon which the latter relied to his injury, which discharges the surety." If the discharge results, not from any change affecting the original contract, but from a collateral agreement to do a certain thing, and the violation thereof to the injury of the surety, under the authorities above cited the result ought to be a discharge of the surety to the extent of the injury caused by the breach of the agreement, and not a discharge in whole. Presiding Justice Cobb was referring to the reason which brought about a discharge, and not to the extent of it.

In *McCarter* v. *Turner,* 49 *Ga.* 309, a note purporting to be a joint and several promise was signed by two persons. Suit was brought upon it on August 14, 1869. One of the defendants filed a plea; the other did not. At the September term, 1870, the case was dismissed as to the defendant who filed the plea, and a judgment was rendered against the other defendant. Execution was issued and levied. The defendant in fi. fa. filed his bill to enjoin the enforcement of the execution, alleging, that he was only a surety for the other defendant, that the dismissal as to the latter was made late in the term, without the present complainant's knowledge or consent, and after he had left the court, and that it operated to discharge him from liability. The answer denied that the complainant was only a surety on the note. The jury found for the complainant, and the defendants moved for a new trial on two grounds: (1) because the court allowed the complainant, over the objection of the defendants, to show that at the time when the note was made it was understood with the payee that complainant was to be the surety of the other maker; and (2) because the court charged that if the two makers of the note were co-obligors, and it was dismissed as to one of them, this would release the other. This court held that the charge was error, and that there was no error in admitting the evidence. In the opinion Trippe, J., discussed what would have been the effect of the dismissal of the suit as to one of the defendants, if the other had been a surety, and this had been known to the creditor, and gave certain reasons for so declaring. But in *Waldrop* v. *Wolff,* 114 *Ga.* 610, 617 (40 S. E. 830), Mr. Justice Cobb, declared that what was said in the former case on this subject was purely obiter, though it was again cited in *Williams* v. *Kennedy,* 134 *Ga.* 339, 343 (67 S. E. 821). In *McCarter* v. *Turner,* supra, the right of the creditor to sue the principal had become barred, and the consequent right of the surety to require this to be done had been lost by the positive act of the creditor in bringing suit and later dismissing the case after the time for bringing suit had expired.

From the above discussion it will be seen that in the present case, if the surety orally requested the payee to bring suit on the note, as the surety did not wish to give the written notice provided by the statute, and if the payee agreed to do so, but did not bring suit for about ten months thereafter, and if some of the property of the

principal defendant was burned before the suit was brought, this would not ipso facto discharge the surety entirely, but to the extent of the loss to him resulting from a breach of the agreement of the holder of the note.

2. Error was assigned on charges of the court to the effect, that the surety had the right to secure himself against any contemplated loss by reason of his suretyship; that if he did that only, it would not affect his right in the case; but that if the surety took a mortgage to prevent the suit from being brought, and he did anything to prevent the suit from being brought, that would estop him from so contending here, his contention being that he wanted the suit brought. The evidence on the subject referred to in these charges is so meagerly set forth in the brief of the evidence that it is impracticable to form any satisfactory idea of exactly what the mortgage and deed were, by whom made, or what they provided. The sole statement in regard to them is as follows: "Mr. Mann tenders mortgage on gin property, dated August 25, 1911; also deed to same property, dated October first, 1912." In his evidence the surety referred to taking these papers, and his willingness to surrender them, indicating that there was an agreement that he should have the mortgage, and that it was made, not by the principal debtor, but by another. In the brief of counsel for plaintiff in error they argued that this mortgage contained a provision that it was given partly in consideration of preventing suit from being brought on the note. But no such recital appears in the record. Under these facts we deem it best not to undertake at this time to pass upon the correctness of the charges as applicable to the evidence. For the reasons heretofore given a reversal must result.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*