## 7236. McMILLAN *v.* HEARD NATIONAL BANK OF JACKSONVILLE.

1. In a suit on a promissory note a petition in two separate and distinct counts, one against the defendant as maker and the other against him as surety, is not duplicitous.
2. When a joint action is brought against the principal and the surety on a joint and several promissory note, and the plaintiff, by amendment, voluntarily dismisses his action against the principal, the surety is not thereby ipso facto discharged from liability.
3. A surety on a promissory note providing for the payment of attorney's fees is ordinarily liable therefor.

DECIDED JANUARY 23, 1917.

Complaint; from city court of Savannah—Judge Davis Freeman. December 10, 1915.

The Heard National Bank of Jacksonville brought suit against the South Atlantic Blow Pipe and Sheet Metal Company as maker and T. H. McMillan as indorser, on writings which were as follows:

"Jacksonville, Fla., Oct. 6, 1914.

"Sixty days after date we promise to pay to the order of the Heard National Bank of Jacksonville $5,000.00—five thousand dollars, with interest after maturity at the rate of ten per cent. per annum until paid, for value received. Negotiable and payable at the Heard National Bank of Jacksonville; and if not paid at maturity this note may be placed in the hands of an attorney at law for collection, and in that event it is agreed and promised by the makers and indorsers severally to pay an additional sum of ten per cent. of the face hereof for attorney's fees.

"South Atlantic Blow Pipe & Sheet Metal Co.     (Seal).
by R. H. McMillan, Mgr.    (Seal).

"(Indorsement) Presentment, protest, and notice of dishonor are hereby waived by each and every indorser hereon. T. H. McMillan. Pay to the order of Chase National Bank. The Heard National Bank. 63-14, Jacksonville, Fla. 63-14. J. J. Heard, Pres. Indorsement cancelled."

"Jacksonville, Fla., Nov. 5, 1914.

"Thirty days after date we promise to pay to the order of the Heard National Bank of Jacksonville $1250.00—twelve hundred and fifty dollars, with interest after maturity at the rate of ten per cent. per annum until paid, for value received. Negotiable and payable at the Heard National Bank of Jacksonville; and if not paid at maturity this note may be placed in the hands of an attorney at law for collection, and in that event it is agreed and promised by the makers and indorsers, severally to pay an additional sum of ten per cent. of the face hereof for attorney's fees.

"South Atlantic Blow Pipe & Sheet Metal Co.　(Seal).

T. H. McMillan, Pres.　(Seal).

" (Indorsement on back) Presentment, protest, and notice of dishonor are hereby waived by each and every indorser hereon.

"T. H. McMillan."

The defendant McMillan demurred both generally and specially and answered, the ground of the special demurrer being that the petition failed to set out any fact that constituted a contract of indorsement on his part. On July 10, 1915, the court sustained the special demurrer and allowed the plaintiff to amend the petition, which was done on July 16, 1915, by setting out that the defendant McMillan was surety instead of indorser on the notes sued on. By another amendment on the same day the plaintiff added to the petition a separate and distinct count, suing McMillan as maker on the notes jointly with the South Atlantic Blow Pipe and Sheet Metal Company. McMillan renewed his general demurrer, and demurred specially to the petition as amended, on the ground that it was duplicitous, because the latter amendment made equivocal allegations as to the right to recover, in that he was sued both as maker and surety. These demurrers were overruled, and exceptions pendente lite were filed by McMillan, and error is assigned thereon. By an amendment allowed on November 10, 1915, the plaintiff voluntarily dismissed its action against the South Atlantic Blow Pipe and Sheet Metal Company, without prejudice to any rights the plaintiff might have against that defendant, and proceeded solely against McMillan.

To the petition as amended McMillan demurred, on the ground that, by reason of the fact that the suit had been dismissed against the principal or maker, the South Atlantic Blow Pipe and Sheet

Metal Company, he was discharged as surety; and on November 19 he moved the court, for this reason, to dismiss the action against him. The court denied this motion and overruled the demurrer; and he filed exceptions pendente lite to this judgment, and error is assigned thereon. On November 22 the defendant moved the court to be allowed to amend his defense by filing a plea to the effect that the plaintiff, by voluntarily dismissing its action against the South Atlantic Blow Pipe and Sheet Metal Company, released and discharged him as surety; and in the proposed amendment he sought to show that he had been deprived of a substantial right, in that the assets of that company consisted of accounts and notes owing to it on April 19, 1915, against which the statute of limitations was running, and that these assets were becoming less valuable and more difficult to collect, and further that the machinery and material owned and used by it on that date were deteriorating and becoming less valuable by wear and tear, and that the expense of keeping the said machinery and material was a constant source of expense, thereby reducing its assets. The proposed amendment further set forth that but for the dismissal of the suit against the principal, McMillan would, if held to be a surety, have had the right to pay off and discharge the debt of the principal, and to have such act entered upon the execution, and to control it for the purpose of enforcing it against the principal debtor, and to be subrogated to all the rights of the plaintiff for the purpose of reimbursing himself from his alleged principal. The court refused to allow this amendment, and the defendant filed exceptions pendente lite to this ruling, and error is assigned thereon. On November 22 he further amended his original defense by filing a plea denying that he was indebted to the plaintiff for attorney's fees, for the reason that he did not undertake or promise to pay the same. On the trial the court, after hearing the evidence, directed a verdict against the defendant as surety, for principal, interest, and attorney's fees as sued for.

Of the contentions made in the court below counsel for the plaintiff in error insists upon only three propositions: (1) that the petition as amended was duplicitous, and therefore should have been dismissed upon demurrer; (2) that the voluntary dismissal of the suit against the principal, the South Atlantic Blow Pipe and Sheet Metal Company, operated as a release and dis-

charge of the surety, McMillan, and that the suit against him should have been dismissed upon demurrer on this ground, and his amendment, setting up this defense should have been allowed; and (3) that his plea setting up his non-liability as a surety for attorney's fees should have been sustained. The foregoing statement sets forth such of the pleadings and the proceedings thereon as are material to an understanding of these contentions.

P. W. *Meldrim,* for plaintiff in error. *Oliver & Oliver,* contra.

Jenkins, J. (After stating the foregoing facts.) 1. The trial judge did not err in refusing to dismiss the plaintiff's amended petition on the ground of its being duplicitous. While the use of two or more inconsistent theories as to the right to recover in the same count would not be permissible, the common-law rule against duplicity was at an early date evaded by setting out the different grounds for recovery for the same demand in separate and distinct counts. Our practice requires that the causes of action be of a similar nature, and that each count shall contain a complete cause of action in distinct and orderly paragraphs. 7 Enc. Pl. & Pr. 236; *Cooper* v. *Portner Brewing Co.,* 112 *Ga.* 894 (3) (38 S. E. 91).

2. The contention upon which the learned counsel for the plaintiff in error mainly insists is that the court below erred in refusing to sustain the demurrer, and to allow the amendment setting up that the surety was released and discharged because the plaintiff voluntarily dismissed the suit against the principal, while maintaining it against the surety alone. While there may be and in fact have been instances in which such action would work such injury to the surety as to justify such result, it can not be stated as a rule that a surety is ipso facto discharged by such an act. Therefore the trial judge did not err in overruling this demurrer. The writings upon which suit was brought in this case are joint and several obligations. *Reid* v. *Flippen,* 47 *Ga.* 273; *Booth* v. *Huff,* 116 *Ga.* 8 (42 S. E. 38, 94 Am. St. R. 98). The liability on the notes being joint and several, it was the right of the holder to sue the principal and surety jointly, or, at his option, to sue either the principal or the surety alone. Civil Code, §§ 3553; 3559; *Howard* v. *Brown,* 3 *Ga.* 523; *Reid* v. *Flippen,* supra. Since the creditor thus has the right to bring his suit solely against the surety, a dismissal of the action against the maker in a joint action

ordinarily works no injury to the surety, and he has no cause to complain thereof. In the case of *Brooks* v. *Thrasher,* 116 *Ga.* 62 (42 S. E. 473), Justice Fish said: "While a petition in an action against A. and B., upon a promissory note purporting to be an instrument which they had executed at the same time, A. by signing the paper on its face and B. by writing his name on the back thereof, may be amended by striking the name of A. as a defendant. . . It was, however, in such a case, erroneous to dismiss the plaintiffs' petition upon the ground that B. appeared, from the petition, to be a surety upon the note, and the suit could not proceed against the surety after the same had been discontinued as to the principal, the note being in the form of a joint and several undertaking." If, however, the particular facts and circumstances attending the dismissal of the suit against the principal in such a joint action are such as to work specific injury and damage to the surety by reason of such action, then and in such event the rule would be otherwise. In the case of *Armstrong* v. *Lewis,* 61 *Ga.* 680, judgment was obtained against the maker and the accommodation indorser, and the maker appealed, giving bond and good security thereon. After judgment, and after appeal bond with good security had been given, the creditor dismissed his appeal as to the maker, thus losing both to the creditor and the indorser the security and protection under the bond given by the maker on appeal. This act of the creditor necessarily harmed the surety on the note. Justice Bleckley laid down the proposition that such an act by the creditor himself would result in the discharge of the surety *under the circumstances detailed in the record of that case.* In the case of *McCarter* v. *Turner,* 49 *Ga.* 309, strongly relied upon by counsel for the plaintiff in error, there was no question of suretyship involved, and, as pointed out by Justice Cobb in *Waldrop* v. *Wolff,* 114 *Ga.* 610 (40 S. E. 830), and by Justice Lumpkin in *Johnson* v. *Longley,* 142 *Ga.* 814 (83 S. E. 952), the reasoning of Judge Trippe in that case upon the question of a surety's discharge is purely obiter. In *McCarter* v. *Turner* Judge Trippe used the following language: "The true reason of our holding is, that a creditor can not, by voluntarily bringing suit, thus discharge the surety from the necessity of giving the notice, put him at ease and off his guard, and then, after the lapse of a considerable time, it may be after protracted litiga-

tion, suddenly, of his own motion and without notice to the surety, dismiss the action as to the principal and claim the payment of the debt from the surety. It would be a legal cheat of the surety out of the protection the law gives to a favored class. Every right the law affords sureties it will strictly enforce. Their liability is stricti juris, and creditors must be astute not to infringe them." The facts in the present case, however, do not bring it within the principle which the reasoning of Judge Trippe outlines. In that case, as pointed out by Justice Lumpkin in *Johnson* v. *Longley,* supra, the right of the creditor to sue the principal had become barred, and the consequent right of the surety to require this to be done had been lost. In the present case none of the difficulties there enumerated exist. A considerable time has not elapsed; there has been no protracted litigation; the action taken by the creditor was not without notice to the surety, but done during the progress of the case where the surety had appeared and pleaded. The facts embraced in the proffered amendment by the defendant in the case at bar, as set forth above in the statement of facts, are not of such character as will take it out of the application of the general rule.

The law looks with favor upon the rights of an indorser or surety, and his liability is one of strict law. However, there are statutory provisions whereby the surety may compel the creditor to bring action against his principal, or in default be himself discharged. Civil Code, § 3546. The Civil Code, § 3544, provides as follows: "Any act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk, or exposes him to greater liability, will discharge him; a mere failure by the creditor to sue as soon as the law allows, or negligence to prosecute with vigor his legal remedies, unless for a consideration, will not release the surety." The rule of law recognized in this State seems to be, as stated in the case of *Williams* v. *Kennedy,* 134 *Ga.* 339, 345 (67 S. E. 821), that some positive act must be done by the creditor, either before or after judgment, which injures the surety in some way; mere failure or negligence on the part of the creditor will not relieve the surety; and the exceptions to this general rule will be found to be where the creditor omits to do something by which some collateral security *in his hands* is made unproductive, or where he is notified under the

statute to proceed and he fails or refuses. Our courts by numerous decisions have upheld the principle that even gross acts of negligence, by way of omission, other than those mentioned, on the part of the creditor in failing to prosecute his remedies against the principal, will in no wise suffice to discharge the surety. The statutes have given to the surety abundant remedies for his protection other than the one already mentioned, whereby he can compel suit by the creditor against the principal, by making the statutory demand upon the creditor. "A surety or indorser is entitled to the process of attachment against his principal before payment of the debt, under the same circumstances as any other creditor." Civil Code, § 3551. "Payment by a surety or indorser of a debt past due entitles him to proceed immediately against his principal for the sum paid, with interest thereon, and all legal costs to which he may have been subjected by the default of his principal." Civil Code, § 3552. "If the payment was made under judgment, and the principal had notice of the pendency of the suit against the surety, the amount of such judgment shall be conclusive against the principal as to the amount for which the surety was bound. If the payment was not made under judgment, the principal may dispute the validity of the payment as to the amount, or as to the competency of the person to whom it was paid." Civil Code, § 3553. "If the surety be sued separately from his principal, on payment by him of the judgment against him he shall be entitled to control the judgment and execution against his principal in the same manner as if the judgment and execution were joint; and if he does not appear as surety in the judgment against him he may give notice and make the proof and obtain control in the same manner as pointed out in cases of joint judgment." Civil Code, § 3559. "If the surety pay off the debt, pending the action against the principal and himself, or against the principal alone, such payment shall operate only to cause the action to proceed for the benefit of such surety, and the judgment may be entered in the name of the original plaintiff for the use of such surety." Civil Code, § 3560. These are remedies to which the surety can resort for his protection, independently of any voluntary action by the creditor. The injury complained of by the surety is simply the discontinuance of a voluntary suit by the creditor, which, in the absence of a demand on the part of the surety, he was not obligated

to bring.  There appear to be no facts set forth in the record whereby the remedies granted the surety are rendered insufficient by reason of the plaintiff's dismissal; and thus the failure of the creditor to voluntarily provide the surety with a judgment against the principal does not, under the facts of this case, appear to have worked such injury to him as would result in his discharge.

3. The third headnote sets out the rule of liability of a surety for attorney's fees.  See *Jones* v. *Findley,* 84 *Ga.* 52 (10 S. E. 541); *Youmans* v. *Puder,* 13 *Ga. App.* 785 (80 S. E. 34); *Savannah Bank & Trust Co.* v. *Purvis,* 6 *Ga. App.* 275 (4), 279 (65 S. E. 35); *Clements* v. *National Bank of Tifton,* 4 *Ga. App.* 270 (61 S. E. 146).

*Judgment affirmed.  Broyles, P. J., and Bloodworth, J., concur.*