### 73686. RICE v. GEORGIA RAILROAD BANK & TRUST COMPANY.
(358 SE2d 882)

BENHAM, Judge.

In February 1984, in conjunction with the execution of a promissory note by the Harrells in favor of appellee bank, appellant executed a guaranty of payment. The Harrells executed another note in favor of the bank in July 1985, and in April 1986, the bank filed suit against appellant on his guaranty, seeking payment of the indebtedness incurred by the Harrells in July 1985. This appeal followed the trial court's grant of summary judgment in favor of the bank.

1. Citing OCGA § 10-7-22, appellant maintains his obligation was discharged because the bank committed an act that increased appellant's risk. The "act" with which appellant finds fault is an increase in the interest rate charged the Harrells: the February 1984 note had a 13 percent rate while the July 1985 note was set at 14 percent. Since any change in the terms of a contract is a novation that will discharge a surety who has not consented to the change (OCGA § 10-7-21), we must focus our attention on the contents of the guaranty agreement to determine if appellant consented in advance to the change in terms. See *C&S Nat. Bank v. Scheider*, 139 Ga. App. 475, 476 (228 SE2d 611) (1976).

Through his guaranty, appellant "unconditionally guarantee[d] . . . the due and punctual payment of *any indebtedness* due the Bank by the [Harrells] *according to the terms of the instruments evidencing such indebtedness.*" (Emphasis supplied.) The guaranty agreement defined "indebtedness" as including "all obligations of the [Harrells] to the Bank of every kind and character now existing or which may hereafter come into existence, and any renewals or extensions thereof. . . ." A typed addendum to appellant's guaranty limited it to the February 1984 loan and any renewal thereof. By signing the guaranty, appellant agreed to pay the February 1984 obligation or any renewal thereof owed the bank by the Harrells according to the terms of the instrument evidencing the indebtedness. It is undisputed that the July 1985 obligation is a renewal of the February 1984 note. Thus, the guaranty agreement covered it as well as the February 1984 note. Since appellant unconditionally guaranteed payment of any renewal of the February 1984 obligation of the Harrells to the bank according to the terms of that renewal, and it is undisputed that the note sued upon was a renewal of the February 1984 obligation the Harrells owed the bank, appellant was properly held accountable.

This court's decision in *Bank of Terrell v. Webb*, 177 Ga. App. 715 (341 SE2d 258) (1986), cited by appellant, is distinguishable. There, in a seemingly unique set of circumstances, the co-maker of a note proved he had signed the note as a surety and then asserted he had not consented to a change in a term of the note, the payment of which he had guaranteed. Since there was no separate guaranty agreement (Webb having signed as co-maker), the bank had to look to the language of the note itself to find language reflecting that the surety had consented in advance to a change in the terms of the contract. Not surprisingly, neither the trial court nor this court was able to accept the contractual language proffered by the bank as giving consent to future changes in contractual terms. In contrast, the guaranty agreement in the case at bar contains an explicit agreement that the signator will pay any obligation that is a renewal of the February 1984 note according to the terms of the renewal.

2. Despite the fact that appellant unconditionally guaranteed payment of the note on which the Harrells defaulted, total summary judgment in favor of the bank was not warranted by the facts of this case. Appellant maintains that, during the period in which his guaranty was in effect, he came into possession of $7,000 belonging to the Harrells. When he called the bank to inquire about the status of the note he had guaranteed, he was told by a bank employee that the note had been "taken care of." Relying on this information, appellant gave the $7,000 to the Harrells, who subsequently defaulted on their note to the bank. The bank denies that appellant was so informed by one of its authorized employees, but concedes that the facts asserted by appellant may be sufficient to partially discharge appellant. We agree.

" 'A promise to look solely to the . . . debtor, or a promise to proceed forthwith against him, is, when standing alone, a nudum pactum that can have no effect on the obligation of the surety. And this is equally true of an allegation that the debt has been paid and that the surety will have no further trouble. When, however, the surety is induced by such an assurance to surrender the securities which he has received from the principal, or to forego any means of indemnity or protection, an estoppel will arise to the extent of the resulting loss.' " *Johnson v. Longley*, 142 Ga. 814 (1) (83 SE 952) (1914). Since there exists a genuine issue of material fact concerning the allegation that appellant was injured in the amount of $7,000 by a statement purportedly made by an authorized bank employee, it was error to grant summary judgment in the bank's favor.

*Judgment reversed. Banke, P. J., and Carley, J., concur.*

DECIDED JUNE 16, 1987.

*Larry I. Smith*, for appellant.
*O. Palmour Hollis, Charles C. Stebbins III*, for appellee.