JOSIAH HOLLINGSWORTH, plaintiff in error, *vs.* J. B. TAN-
NER, defendant in error.

Where upon a bill filed to enjoin the execution of certain *fi. fas.* ob-
tained against A as principal, and B as surety, upon the ground that
the owner of the *fi. fas.* had made a contract with A, by which he
owed him an amount equal to the judgment, and which he paid him
to the wrong of his surety, by which the surety claimed to be dis-
charged, and upon the hearing the holder of the *fi. fas.*, by his an-
swer showed that he was the owner thereof, and that during the war
he had employed the principal defendant to carry off his negroes out
of the reach of the Federal army, and had paid him therefor at the
time in old issue of Confederate money, and that his family were des-
titute, and that there was no collusion, etc., and the Court, upon the
bill and answer, refused an injunction:

*Held*, That this Court will not interfere with the discretion of the Judge
below in refusing an injunction under the facts in this case, and that
the employment and payment of the principal defendant as stated did
not discharge the surety from liability on the judgment.

Sureties. Before Judge GREEN. Rockdale Superior Court.
May Term, 1871.

This case is sufficiently reported in the opinion.

A. M. SPEER; S. C. MCDANIEL, for plaintiff in error.

M. ARNOLD, for defendant.

LOCHRANE, Chief Justice.

It appears, by reference to the facts in this case, that Hol-
lingsworth, the plaintiff in error, instituted his complaint in
equity against J. B. Tanner, praying injunction to stop the
enforcement of certain *fi. fas.* At the hearing Tanner made
answer, and upon argument the Court refused the injunction.
This judgment of the Court, refusing the injunction, was
excepted to, and is the error assigned.

The bill sets up that sometime in 1861 Hollingsworth be-
came the security of one Peter Mosely, upon certain notes
which he gave to a party named Sprayberry, which had been
sued to judgment, and subsequently transferred by Spray-

berry to J. B. Tanner. The bill alleges that while Tanner was the owner of these judgments he became, by contract, indebted to Mosely, the principal in the notes, in the sum of three hundred dollars, or a sum exceeding the amount of the *fi. fas.*, and that, in fraud and violation of the equities of the complainant, he did combine and confederate with Mosely and settled and paid him off, still holding the *fi. fas.* unsettled, which payment he avers was without his consent or knowledge.

Mr. Tanner, in his answer to that part of the bill, says that sometime in September, 1864, he procured the services of Mosely to take some negroes belonging to him out of the way of the Federal army, for which he paid him in Confederate money, at the time the services were rendered, amounting to $255 00, in old issue, and that his family were in great destitution, and he paid him for the service to relieve him and his family, etc. He denies all fraud or collusion, and gives a statement of the facts as they occurred.

The ground of equity urged by the complainant is that, inasmuch as the holder of the *fi. fas.* had in his hands this money and paid it over to Mosely, the principal in the notes upon which the *fi. fas.* were based, by this act, he has discharged the surety, and that equity ought to interfere by injunction to stop the collection of the *fi. fas.* out of the property of the security, the plaintiff in error. The decision of this Court in 3 Kelly, *Curran vs. Colbert*, 239, is invoked to sustain the doctrine, that any act of the holder which increases the risk of the surety will discharge the surety. That case was the dismission of a levy and the release of the property of the principal, levied on by a creditor having judgment against the principal and surety, without the privity of the surety. But the doctrine is clearly recognized *as settled* in the books that "*mere indulgence*, unless given upon a new and distinct consideration, or unless given under such a binding obligation as precludes the creditor from pursuing his remedy on the debt, will not discharge the surety."

Hollingsworth *vs.* Tanner.

Now, after judgment against the principal and surety, (for that is this case,) the rule is, that any act of the creditor which discharges the lien of the judgment, discharges also the obligation of the surety, and if the *fi. fa.* were levied upon the property of the principal defendant, and the levy dismissed by the creditor, whereby injury resulted to the surety, it is just that such act should enure to his discharge. The contract of suretyship is one of strict law, and the creditor to retain his lien on the property of the surety, must do no act which discharges the principal, or which endangers the rights of the surety, or by which he changes the original rights of the parties at the time the contract was made.

But while these doctrines found in our Code are fully recognized, we do not think the case made by the bill and answer presents such a case by the pleadings. Was the employment of Mosely to discharge a service for the creditor, for which he was to be paid, and for which he was paid at the time, such an act as injured the surety, or varied the contract and obligation of suretyship in the original agreement? We think not. The answer exhibits the facts, under such circumstances, as negatives all motives of fraud or collusion. He was the owner of a judgment against him and complainant as surety, and while holding this judgment he employed the principal defendant for a specific duty, at a certain price, and paid him ; he was destitute and his family needed the actual payment for his services to live at the time. In no sense could this act be regarded, under our law, as a discharge of either principal or surety. And we therefore affirm the judgment of the Court below.

Judgment affirmed.