JAMES M. BULLARD, SR., et al., plaintiffs in error, vs. JOHN LEDBETTER, defendant in error.

Where the securities on a rent note notify the holder of said note, that their principal is removing enough cotton from the rented premises to pay the note, and call upon him to distrain, and the holder promised the sureties to do so, and said that he would collect the note from the principal, and would not look to them at all for the money, and where the holder failed to distrain, and suffered the property to be taken away, and the sureties were ignorant of it for more than a year, and were induced, by this assurance, to forego legal proceedings to make the money out of the cotton themselves, and were thus damnified the value of the note—the principal debtor being insolvent all the time:

*Held*, that the conduct of the holder, in thus preventing the securities from using their legal remedies, will estop him from collecting the note from the sureties—that they are thereby discharged—and that the court erred in striking a plea to that effect.

Principal and security. Before Judge BARTLETT. Putnam Superior Court. March Term, 1877.

Reported in the opinion.

A. REESE; W. F. & H. A. JENKINS, by Z. D. HARRISON, for plaintiffs in error.

LOFTON & BARTLETT, for defendant.

JACKSON, Judge.

Ledbetter, as bearer, sued J. M. Bullard, Jr., principal, and J. M. Bullard, Sr., A. W. Athon and J. R. Jennings, securities, on a rent note, due the 25th of December, 1871, for $150.00.

Bullard, Sr., the surety, filed the following plea:

" That plaintiff ought not to have and maintain his action against the sureties, because he says that prior to the time when said Ledbetter acquired the possession of the note on which the suit is pending—but while it was, in fact, his property, as the ward of Wiley C. Anderson, who was his legally

appointed guardian, and then the holder of said note—deponent, in November, 1871, notified said Anderson, who then held said note for his ward, that said James M. Bullard, Jr., who was then, and still is, insolvent, was in possession of a sufficient quantity of cotton, raised on the land for the rent of which said note was given, and that he was removing said crop from the rented premises, and which said debt had, under the laws of said state, priority over all other debts of said principal debtor, to satisfy the same in full ; and urged said Anderson to take the necessary and legal steps to collect said rent.    That said Anderson promised to do so, and told deponent that said sureties need not trouble themselves about the debt, and might rely upon his collecting the same out of the principal debtor's crop of that year.    That these securities, to whom these statements were made known, acting and relying upon the assurance of said Anderson that he would save them harmless as aforesaid, did not avail themselves of the means afforded by the law to protect themselves from loss, and hearing nothing more of said debt until after its maturity, to-wit : until more than one year after said assurance, and after all the crops of 1871 had been disposed of by said principal debtor, and believing that said Anderson had acted in good faith, and had collected the same out of said principal debtor, as he induced said securities to believe he would do.    That but for the facts aforesaid, and assurances of said Anderson that he would avail himself of them and collect said debt, and his failure to make known to said securities his negligence and misconduct as aforesaid, they would have taken the legal and necessary steps to secure themselves against loss by reason of their said securityship ; and that the negligence and misconduct as aforesaid of said Anderson, resulted directly to said securities' loss and damage—the debt aforesaid being now unpaid, said Anderson having never taken any steps to collect said debt, or to save securities harmless, and permitted the crops of 1871 to be removed and disposed of before the maturity of said note, to their damage and risk as aforesaid."

A second plea was also filed by the sureties, but it need not be set out here, as it was not sufficiently explicit; it not setting out the amount of the account allowed to be paid, nor to whom paid, and is based wholly upon information.

The court struck both pleas, and the securities excepted. The question is, was the court right in striking the plea set out above?

It is not as clearly drawn as it might have been; but the sum and substance of it is, that the guardian of the plaintiff controlled the land rented and the note, and that he promised the sureties to levy a distress warrant on the crop of 1871, when about to be removed, and told them that they need not trouble themselves to interfere about the rent; that he would secure it from the principal debtor, and out of the crop; that but for this assurance, the sureties would themselves have taken legal steps to make the money out of the crop; that they thought he had kept his promise until more than a year after the crop was gone, and, thereby, that they were damaged the whole debt, if they had it to pay, as enough cotton was moved off to pay the whole debt, and the principal debtor was insolvent.

Did this conduct, on the part of the creditor, release the sureties?

In 2d American Leadiny Cases, 481, this principle is laid down: "A promise to look solely to the principal debtor (written there creditor, evidently by mistake, or misprint,) or a promise to proceed forthwith against him, is, when standing alone, a *nudum pactum* that can have no effect on the obligation of the surety. And this is equally true of the allegation that the debt has been paid, and that the surety will have no further trouble. When, however, the surety is induced *by such an assurance* to surrender the sesurities which he has received from the principal, *or to forego any. means of indemnity or protection, an estoppel will arise to the extent of the resulting loss;*" and several cases are cited to support the principle.

It would seem that the principle covers this case. If this

plea be true, these securities were induced by this assurance
of Anderson to forego legal means of protection and in-
demnity which they could have asserted, if not at law, at
all events, in equity, to prevent the removal of this cotton
till the debt was paid.. And as the cotton which they could
have seized, or enjoined the principal from removing, was
of sufficient value to pay the whole debt, according to the
plea, which the demurrer admits to be true, their resulting
loss is the entire debt for which they were responsible.

So in 54 *Ga.*, 277, it was held that the surety on a prom-
issory note was discharged when the holder told him that it
was paid in a trade he made with the principal, and the surety
was suffered to remain in ignorance, that it was not paid, for
five years; and the court argue that the risk of the surety,
under the Code, §2156, was increased. He might have no-
tified suit to be brought, and thus have been injured. We
think this case stronger for the surety than that was. Here,
the holder was notified, not in writing, it is true, and before
the debt was due, but still, he was notified to distrain. He
promised to do so, but failed; and by his promise, and fail-
ure, the sureties were induced to abandon their legal reme-
dies, and to lose a lien. Indeed, here a lien could have been
put, if it was not already, on the property about to be re-
moved; and the creditor promised to distrain, and did not,
and prevented the sureties, by the promise, from doing it.

So in 55 *Ga.*, 662, the case in 54 Ga., 277, is cited ap-
provingly; and the principle is applied to the case where
the holder of a draft told the drawer that the acceptor had
arranged the draft, and the drawer was induced to act upon
that statement in a settlement with the acceptor, and to al-
low him credit for the payment, and the acceptor had be-
come insolvent. It was there held that the drawer was dis-
charged.

It is true that in this case the principal debtor was insol-
vent all the time, when the note was made, as well as when
the sureties were sued; but the crop of cotton would have
paid the debt, and that was lost by the fraud of the holder,

if the plea is true. If such be the fact, that the holder promised to do a thing which would have secured this debt, and did not do it, and by his promise and failure to fulfil his promise, the sureties were induced to forego a remedy they had, and thereby have been injured the extent of the note, they are discharged.

We think, therefore, that the court erred in striking the plea.

Judgment reversed.