WALSH *et al. vs.* COLQUITT, governor.

1. Where suit was brought on a bond in the county of the residence of the principal, against him and two securities residing in other counties, to which all parties appeared and pleaded, and the principal having died, his death was suggested, and an order taken allowing the case to proceed as to the securities, a plea to the jurisdiction filed by them was properly overruled.

2. The bond of a public printer was conditioned for his faithful performance of "all and singular the duties prescribed by the laws of Georgia appertaining to said office of state printer for and during the term for which he has been elected." At the time of its execution the law regulating his compensation was as follows: "If said printer shall legally and faithfully perform his duties, he shall be compensated as follows: He shall be paid twenty-five per cent on the actual cost of the material and labor employed in the public printing; provided that before being paid he shall make out an account on oath of the actual cost of the material and labor employed, stating that said account is correct and just, and that the prices paid are not above the customary rates for similar work and material when employed in the service of private parties to do a like amount of printing." After the execution of the bond the legislature, by resolution, authorized the treasurer to advance to the state printer $5,000 00 in part payment for the public printing of the session then pending:

*Held,* that this was such a novation of the contract as discharged the sureties if done without their consent.

3. Alston, the public printer, was insolvent; he had misappropriated $5,000.00 of the public funds advanced to him, and had become liable for liquidated damages amounting to $3,000.00, in addition. The governor, as agent of the state, received $198,028.58 from a claim of the state against the United States. He did not deposit all of it in the state treasury; but, out of the sum so collected, paid to the use of Alston $15,000 as a fee in connection with said claim.

The indebtedness of Alston to the state was not reserved out of this amount:

*Held,* that such action increased the liability of the sureties on Alston's bond, and thereby discharged them. If the governor had paid the money received by him into the state treasury, and Alston had presented his claim and it had been found due, the state, as a creditor, would have been bound to have retained enough out of what was due him to satisfy his liability, for the protection of its own interest as well as that of the securities—he being insolvent. It can make no difference, so far as this principle is concerned, that the governor as the agent of the state, paid the money directly to the use of Alston instead of first paying it into the treasury.

Principal and surety.   Bonds.   Officers.   Contracts. Novation.   Jurisdiction.   Practice in the Superior Court. Before Judge HILLYER.   DeKalb Superior Court.   September Term, 1879.

To the report contained in the decision it is only necessary to add that the following were among the grounds of the motion for new trial made by Walsh *et al.*:

(1). Because the court sustained plaintiff's demurrer to defendants' plea to the jurisdiction.

(2). Because the court refused to charge the following request of defendants' counsel: " Where plaintiff seeks to show that the surety has consented to a change of contract, it must be *clearly* shown ; for liabilities of sureties cannot be extended by implication."

On this subject the court charged as follows :  " It is not necessary for the state to show in the proof that the sureties, in so many words, either oral or written, expressed that consent, but it is necessary that facts or circumstances should be in proof sufficient to authorize the jury to their clear satisfaction to infer that, in their own minds, the sureties consented to it."

(3). Because the court charged as follows, and refused to give requests to the contrary : " As to the plea setting up an alleged release of the sureties by governor Colquitt, governor of the state, in paying to Alston $15,000.00, or other large sum in money in 1877, the court instructs you

as follows: The court is of the opinion that if the state, by legislative authority, under the circumstances as claimed, paid Alston $15,000.00, or other like sum more than the alleged liability, it may have operated to release the sureties ; but the court instructs you, if the facts were that the state of Georgia had a claim against the United States government for $100,000.00, or $200,000.00, or other like sum, and if a draft issued from the United States treasury for that sum, payable to the order of Alfred H. Colquitt, governor, and if that draft came to the hands of the governor and he re-alized the money on it, and the funds being in his hands, before paying it into the treasury, he paid Alston $15,-000.00, or other like fee due by the state to Alston, it cannot be said that said sum was so in the treasury of the state, or such payment was so made by the state that it will operate to relieve the sureties, and the court instructs you that payment under such circumstances by the governor, before the funds went into the treasury of the state, would not relieve the sureties ; the court is of the opinion that no money is in the hands of the state until it has passed into the hands of the comptroller-general and has been deposited in the office of the treasurer."

Plaintiff made a counter-motion for a new trial, and excepted upon its being overruled. But as the decision upon defendants' motion controls the case, it is unnecessary to set out that of plaintiff.

BARNES & CUMMING ; J. L. BROWN ; MYNATT & HOWELL, for Walsh *et al.*

R. N. ELY, attorney-general ; Z. D. HARRISON, *contra.*

WARNER, Chief Justice.

This was an action brought by the plaintiff against the defendants on a bond executed by them in the sum of $10,000.00, signed by Alston, as principal, and by Walsh and Adair, as securities, conditioned for the faithful per-

formance by Alston of the duties of public printer of the state. The alleged breach of the bond is that Alston had received $5,000.00 under a resolution of the general assembly, and had failed to account for the same, and had appropriated it to his own use, etc., and that Alston was further liable in the sum of $3,000.00 as liquidated damages. The securities pleaded that the plaintiff, after the default of said Alston, had paid him $15,000.00 without deducting said debt, with full knowledge of his insolvency, whereby the said secureties became released, and further, that by reason of the advance of the said $5,000.00 before the same was due to said Alston under his contract for work done by him as public printer, the risk of the defendants as his securities was increased, and they were thereby exposed to greater liability to loss. Alston having died pending the suit, an order was taken suggesting his death and that the cause proceed against the other two defendants; thereupon they pleaded to the jurisdiction of the court on the ground that neither of them resided in the county of DeKalb, in which the suit was instituted. The plea was overruled. The jury, under the charge of the court, found a verdict for the plaintiff for $2,500.00, principal, and $641.66, for interest. A motion was made for a new trial on numerous grounds, which was overruled, and the defendants excepted.

1. There was no error in overruling the plea to the jurisdiction of the court.

2. It appears from the record that Alston was elected public printer in January, 1875, and his bond was executed January 30th, 1875, and he was to enter on the discharge of his duties the first day of the next session of the general assembly.

On the 19th of February, 1876, the general assembly passed a resolution authorizing the treasurer to advance to the public printer, the sum of $5,000.00 in part payment of the public printing for the present session. The condition of the bond is " that if the said Alston shall well and faithfully do and perform all and singular the duties pre-

scribed by the laws of Georgia appertaining to said office of state printer for and during the term for which he has been elected, then this bond or obligation to be void," etc.   The laws of Georgia prescribing the duties of public printer are to be found in the following sections of the Code, to-wit: 1022, 1023, 1026, 1027, 1028, 1029, 1031, 1033 and 1034, as to the time and manner in which he was to be paid for his services, that is to say, he shall be paid twenty-five per cent. on the actual cost of the material and labor employed in the public printing, provided that before being paid therefor, he shall make out an account on oath, of the actual cost of the material and labor employed, stating that said account is correct and just, and that the prices paid are not above the customary rates for similar work and material when employed in the service of private parties to do a like amount of printing.   Thus stood the law at the time the bond was executed by the defendants on the 30th of January, 1875, as to the time and manner of the payment of the public printer for his services as such, and the question is, whether the resolution of 1876, authorizing the treasurer to pay him $5,000.00, in advance of the performance of any work done by him as public printer, was such a change of the nature of the contract as amounted to a novation without the consent of the sureties and discharged them under the provisions of the 2153d section of the Code? In our judgment it was such a change of the contract as would discharge the sureties if done *without their consent.* The securities might have been willing to stand for their principal when he was to perform his duties and be paid therefor, as prescribed by law, that is to say, when he had done the work, but not willing to stand for him and be responsible for $5,000.00 advanced to him before he had done any work as public printer, to be used by their principal as he might think proper.   The advance of $5,000.00 to Alston, their principal, before he had done any work for the state as public printer, was an inducement to him not to do it, and thereby calculated to injure his sureties.   The con-

sent of the sureties to the advance of the $5,000.00 may be proved either by direct evidence, or by indirect or circumstantial evidence tending to prove that fact.

3. It appears from the evidence in the record that Alston, the principal in the bond, was *insolvent*, and it further appears from the evidence of Treasurer Renfroe, that in May, 1877, Governor Colquitt presented to him a check drawn in favor of the United States treasurer in Washington on the United States treasurer in New York, dated 28th of April, 1877, for one hundred and ninety-eight thousand and twenty-eight dollars and fifty eight cents, payable at sight to the order of Alfred H. Colquitt, governor of Georgia, and stated to him (the treasurer) that $152,278.24 was to be paid into the treasury of the state, and that the balance he would reserve to pay attorneys' fees for which the check was liable. The $152,278.24 was deposited in the treasury, but does not know what became of the balance only from hearsay. Governor Colquitt testified that in 1876 the Atlanta *Herald*, in which Alston was interested, was sold out for debt, and that Alston was much pressed for money, that in May, 1877, he, as the governor of the state, paid for *the use* of Alston about $15,000.00 for a fee due to him as one of the attorneys for the state in the case of The State of Georgia *vs.* The United States.

The 2154th section of the Code declares that " any act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk, or exposes him to greater liability, will discharge him." In the case before us, the state was the creditor of Alston, who was *insolvent*, and the defendants were his sureties for his indebtedness to the state. The whole amount of the money due on the check hereinbefore described was the property of the state, the governor being the duly authorized agent of the state to receive the same for the purpose of paying it into the treasury, where the whole of it appropriately belonged under the laws of the state. The governor recognized the fact that the money belonged to the state, and that he was only the agent for the state in its collection, by

paying into the state treasury the sum of $152,278.24 of
the amount received by him. If the governor had paid
the full amount of the money received by him into the
treasury of the state, as the law contemplates he should
have done, and Alston had presented his claim against the
state and the same was justly due him, the state would have
paid him, less the amount that he was due the state; the
state, as a creditor of Alston, would have been bound to
have retained enough out of what was due him for the pro-
tection of the state's interest, as well as for the protection
of his sureties, he being *insolvent.* The principle is not
changed by the fact that the governor, who was the agent
of the state, withheld a part of the money from the treas-
ury and paid it to Alston without deducting Alston's in-
debtedness to the state; the money in the governor's hands
was the money of the state all the same, and if the governor,
as the authorized agent of the state, had an amount of its
money in his hands due to Alston by the state of a greater
amount than Alston's indebtedness to the state, and paid
the same over to Alston without deducting therefrom what
Alston owed the state, that would have been such an act
on the part of the creditor by its authorized agent, the
governor, as would injure the sureties of Alston by increas-
ing their risk, and exposing them to greater liability, Alston,
their principal, being *insolvent.* In our judgment, the
charge of the court in relation to this point in the case, as
set forth in the record, was error. There are but two main
controlling questions in this case, although there are fifty
assignments of error. First, were the defendants, as sure-
ties, discharged by the change and novation of the contract,
without their *consent,* under the provisions of the 2153rd
section of the Code? Second, were the sureties discharged
under the provisions of the 2154th section of the Code?
As we grant a new trial in this case on the defendants'
motion therefor, we express no opinion as to the grounds
contained in the plaintiff's motion for a new trial, both cases
having been argued together here.

Let the judgment of the court below be reversed.