## DAVENPORT v. STATE BANKING COMPANY.

The fact that a bank which is the owner of a note upon which there is a surety is, at its maturity, indebted, upon general deposit account, to the principal upon the note in a sum larger than that due upon the note, and fails to exercise its right to set off the amount of the note

against this deposit indebtedness, and allows the deposit to be checked out by such depositor, does not discharge the surety on the note.

Argued December 6, 1905.—Decided August 9, 1906.

Complaint.   Before Judge Prior.   City court of Hall county. May 15, 1905.

The State Banking Company brought suit for the sum of $93.96 and interest, against Davenport as indorser for value, upon two promissory notes, each dated September 1, 1902, and due December 1, thereafter, each being executed by Lipscomb as maker, payable to the order of Davenport and indorsed by the payee to the plaintiff. Davenport admitted the execution of the notes, that he had indorsed them to the plaintiff, and that the latter was the legal holder of the same; but he pleaded that as surety he had been released from liability by the conduct of the plaintiff.   His defense was, that, when the notes became due and for some time thereafter, his principal, Lipscomb, had upon deposit in the bank of the plaintiff several hundred dollars in money, much more than enough to pay off and discharge both notes, and had very little, if any, other property "out which said debt could be made;" and that the plaintiff, without requiring Lipscomb to pay the notes, "and without retaining or attempting to retain said money or any part thereof," and without the consent of the defendant, "allowed said Lipscomb to check out said money and use the same, . . so as to leave nothing in the hands of plaintiff with which to pay said notes."   He alleged that "this act on the part of the plaintiff increased his risk," and, as he was only secondarily liable upon the notes, discharged him.   He further alleged that Sanders, "president of the State Banking Company, after said notes became due, told [him] that Lipscomb had about $600.00 on deposit in the State Banking Company, and that if he, Davenport, would get said Lipscomb to come to the bank, he, Sanders, would make said Lipscomb give said bank a check out of said fund to settle said notes;" and that thereupon defendant "got said Lipscomb in said bank, before said Sanders," and told Sanders "that he must make Lipscomb pay it out of the money on deposit, and that he, Davenport, was off of the note, and would not be liable any further;" that Lipscomb thereupon asked Sanders for further time on the notes, stating at the time that it was his and not Davenport's debt, and he would pay it in a short time, "and the

said Sanders, president, thereupon granted said Lipscomb further time, over defendant's objections and protest, and also allowed said Lipscomb to check out all of said $600.00." He also alleged that the money was checked out by Lipscomb "to pay a fine imposed upon him for selling liquor without a license, and the State Banking Company allowed said money drawn out for said purpose, knowing the purpose for which it was drawn out, and without notice to or consent by [the] defendant," and that the payment of the money on the fine rendered Lipscomb insolvent. On motion the plea was stricken as setting forth no legal defense. The defendant excepted.

*H. H. Dean*, for plaintiff in error.

*Fletcher M. Johnson* and *J. A. Bell Jr.*, contra.

COBB, P. J. (After stating the facts.) The precise question made in this case has never been decided by this court, and in respect thereto there is, in principle, a conflict in the decisions which have been rendered in other jurisdictions. We say there is a conflict in principle, because if we take the cases in which a surety upon a note held by a bank claimed to have been discharged because, *at the time of its maturity,* the principal had sufficient funds on general deposit in the bank to pay it, and the bank failed to charge the amount of the note up against such deposit account, there is really not much conflict. But when we consider the principle, or principles, upon which these cases, holding the surety discharged, have been decided, and then consider the cases in which the failure of a bank to exercise its right of set-off against deposits of the maker of a note, made subsequently to its maturity, has been held not to discharge a surety upon such note, and the reasons upon which these decisions have been based, we find that there is a marked and, to us, an irreconcilable conflict in the authorities upon the question under consideration. It has been held in a number of cases that where a bank is the owner of a note or other obligation evidencing an indebtedness, upon which there is a surety, and at the maturity of the debt the principal debtor has funds on general deposit with the bank, sufficient to pay the debt, the failure of the bank to apply such funds to its payment will discharge the surety. Commercial Bank v. Henninger, 105 Pa. St. 496; German National Bank v. Foreman, 138 Ib. 474; Dawson v. Real Estate Bank, 5 Pike (Ark.), 283; Pursifull v. Pineville Banking Co. (Ky.), 30 S. W. 203; Central Bank of Rochester v. Thein, 83 N. Y. 571. The

contrary view was taken in Second National Bank *v.* Hill, 76 Ind. 223, Martin *v.* Mechanics' Bank, 6 Harr. & Johns. (Md.) 235, and National Mahaiwe Bank *v.* Peck, 127 Mass. 298. For although in the Massachusetts case, and perhaps in each of the other two, the decision might have been placed upon the narrow ground that it did not appear that at the maturity of the note the bank held on general deposit funds of the principal sufficient to pay it, in none of these cases was this done, but the decision in each case was placed upon the broad ground that the bank was not bound to set off the amount of a note due to it by a depositor against his general deposit account, for the protection of a surety upon the note. It has been held by almost all the courts where the questions have arisen, that if at the maturity of a note held by a bank the principal thereon has not sufficient funds on general deposit with the bank to pay it, the bank is under no duty to a surety upon the note to apply such funds of the principal as may then be on deposit to the payment of the note pro tanto, nor is it bound to pay the note from subsequent deposits of the principal, although they are sufficient for this purpose. Peoples' Bank of Wilkes-Barre *v.* Legrand, 103 Pa. St. 309; First National Bank of Lancaster *v.* Shreiner, 110 Ib. 188; First National Bank of Lock Haven *v.* Peltz, 176 Ib. 513; Voss *v.* German American Bank, 83 Ill. 599; National Bank of Newburg *v.* Smith, 66 N. Y. 271; Bacon's Admr. *v.* Bacon's Trustees, 94 Va. 686; Houston *v.* Braden (Tex.), 37 S. W. 467; Citizens Bank *v.* Elliott (Kan.), 59 Pac. 1102. The only case to the contrary which we have found is McDowell *v.* Wilmington Bank, 1 Harr. (Del.) 369.

Let us examine the grounds upon which courts have based decisions discharging a surety when the bank holding the note fails, upon its maturity, to pay it from funds of the maker which it then holds on general deposit, which are sufficient for this purpose. All of the courts which have dealt with the question seem to recognize the right of the bank to set off the amount due it upon a note by one of its depositors against its indebtedness, on general deposit account, to such depositor, whether such indebtedness on its part exists at the time the note matures or is caused by deposits subsequently made. And it is upon this right to extinguish the note by applying thereto an amount of its general deposit indebtedness to the maker thereof, sufficient for the purpose, that most of the de-

cisions in which sureties have been held to be discharged have been placed. Thus, in Commercial National Bank v. Henninger, supra, while it was held that the note in question, being made payable at the bank which held it, was equivalent to a draft or check upon the bank for the amount of the note, yet the court first undertook to demonstrate that the surety on the note was released because the bank had the right to set off the amount of the note against its general deposit indebtedness to the maker thereof, and this right it was bound to exercise for the protection of the surety. The court said: "The rule is well settled that 'when a creditor has in his hands the means of paying his debt out of the property of his principal debtor, and does not use it, but gives it up, the surety is discharged. It need not be actually in the hands of the creditor; if it be within his control, so that by the exercise of reasonable diligence he may have realized his pay out of it, yet voluntarily and by supine negligence relinquished it, the surety is discharged.'" In support of the ruling, the court used the following illustration: "If I am the holder of A's note, indorsed by C., and when the note matures I am indebted to A. in an amount equal to or exceeding the note, can I have the note protested and hold C. as an indorser? It is true that A's note is not technically paid, but the right to set-off exists, and surely C. may show, in relief of his obligation as surety, that I am really the debtor, instead of the creditor of A. If this is so between individuals, why is it not so between the bank and individuals?" Under this argument and this principle, it is quite clear that it would make no difference whether the note was made payable at the bank or not. In either case the bank would have the right of set-off, and its failure to exercise it would discharge the surety. And under the principle here announced we can not see why it should make any difference whether the opportunity for the bank to protect the surety occurred at the precise time that the note matured or afterwards. In so far as the decision in that case and the one in German National Bank v. Foreman, supra, which followed it, and any decision rendered in another jurisdiction, may be based on the idea that a note payable at a particular·bank is equivalent to a draft or check on that bank for its amount, it is not applicable to the case with which we are dealing; for in this case the note was not made payable at any bank at all. And we may say, in passing, that this construction of a note payable

at a bank, which obtains in a number of jurisdictions, is by no means generally accepted by the courts, but has met with vigorous protest. Grissom *v.* Commercial Bank, 87 Tenn. 350; Wood *v.* Merchants' Trust Co., 41 Ill. 267; Ridgely National Bank *v.* Hamilton, 109 Ib. 479; Scott *v.* Shirk, 60 Ind. 160; Second Nat. Bank *v.* Hill, supra; Gordon *v.* Muchler, 34 La. Ann. 604. In so far as the decisions in these Pennsylvania cases, and the other cases wherein a surety on a note owned by a bank has been held to have been discharged by the failure of the bank, upon the maturity of the note, to charge the amount thereof against the deposit account of the principal obligor, rest upon the principle that the bank was bound, for the protection of the surety, to exercise its right of set-off against the principal, we fail to see any rational distinction between them and the cases in which it has been held that a surety is not discharged by the failure of the bank to apply deposits of the principal debtor made subsequently to the maturity of the note to its payment. For, as it is generally held that the bank has the right of set-off in either instance, it would seem that if its neglect to exercise it in the one instance would discharge the surety, its failure to exercise it in the other would likewise do so. And yet, as will be seen from cases cited above, the same courts which hold a surety discharged if the amount of the deposit of the maker of the note, at its maturity, is sufficient to pay it, and the bank fails to avail itself of its right of set-off, also hold that a failure by the bank to apply general deposits made by the maker subsequently to the maturity of the note to its payment will not discharge the surety. For instance, it was held in Peoples' Bank of Wilkes-Barre *v.* Legrand, 103 Pa. St. 309, that "Where at the maturity of a note held by a bank the maker's balance on deposit in said bank was insufficient to pay the note, which was protested for non-payment, the bank is not bound, for the protection of the indorser, to apply the maker's subsequent deposits to the payment of the note, although they were sufficient for that purpose." In the opinion it was said: "While it is true that a bank is a mere debtor to its depositor for the amount of his deposit, and, therefore, in an action by the bank against the depositor, on a note upon which he is liable, the latter may set-off his deposit, yet we do not think the bank is bound to hold a deposit for the protection of an endorser of the depositor. A bank deposit is different from an ordinary debt in this,

that from its very nature it is constantly subject to the check of the depositor, and is always payable on demand. The convenience of the commercial world, the enormous amount of transactions by means of bank checks, occurring every business day in all parts of the country, require that the greatest facilities should be afforded for the use of bank deposits by means of checks drawn against them. The free use of checks for commercial purposes would be greatly impaired, if the banks could only honor them on peril of relieving indorsers, without an investigation of the state of the depositor's liabilities on discounted paper. . . It is beyond question that the bank, in the absence of any special appropriation of the deposit by the depositor, would have the right to apply a general deposit to any existing matured indebtedness of the depositor. But that privilege is a right which the bank may or may not exercise in its discretion. . . We fully recognize the rule that where a principal creditor has the means of satisfaction actually or potentially within his grasp, he must retain them for the benefit of the surety, but we regard the case of bank deposits as an exception to the rule." Most of this language of the Pennsylvania court was approvingly quoted, and the views therein set forth were followed, by the Kansas court in Citizens Bank *v.* Elliott, and by the Texas court in Haven *v.* Peltz, 176 Pa. St. 513, it was held: "While a bank which is a holder of a promissory note and has on deposit at the time of maturity to the credit of any party liable to it on the note a Houston *v.* Braden, supra. Again, in First National Bank of Lock sum sufficient to pay it, and not previously appropriated by the depositor to be held for a different purpose, may apply the deposit to the payment of the note, yet it is not in general bound to do so. The cases where the right becomes a duty on the part of the bank rest on the special equity of the party, usually the indorser, to have the payment enforced against the depositor as the one primarily liable. In these cases the deposit must be sufficient at the time of the maturity of the note, it must not have been previously appropriated to any other use, and it must be to the credit of the party primarily liable." In the opinion the court said that though the title to money deposited passes to the bank, "yet the whole business of banking is founded on the faith of the immediate availability of the deposit, as money, for the use of the depositor, and any rule that interfered with the freedom of action of either bank or cus-

tomer, by compelling a stop of their dealings with each other to examine the relations of other parties to the deposit, would go far towards destroying that instant convertibility which is the essence of the business. We do not think it desirable to go beyond the line already marked by the authorities." In the case with which the court was dealing it appeared that the party claiming to have been released by the conduct of the bank was a mere accommodation surety for the payee of the note, who had procured the bank to discount it, and he offered to prove that six days after the maturity of the note and at other times thereafter the bank had a balance to the credit of such payee sufficient to pay the note, and allowed him to check it out, although it knew at the time it did so of the fact of such suretyship. Yet it was held, for the reasons stated in the opinion, that the evidence offered "was incompetent and irrelevant." So both the ruling, as applied to the facts, and the opinion in the case show that the court realized the necessity of putting a rigid and, as it seems to us, an arbitrary, limitation upon the broad principle which has been applied in the cases in which a surety upon a note owned by a bank has been held to have been discharged by the failure of the bank to exercise its right of set-off against the party primarily liable thereon. The broad principle to which we refer and which has been invoked in such cases is, that when the creditor has the means of satisfying the debt actually or potentially within his control, he must retain them for the benefit of the surety. If this principle applies at all to deposits of money in a bank, it is difficult to see why it should be rigidly limited to deposits held by the bank at the time the depositor's debt to the bank matures; for if the means of satisfaction can be said to be within the control of the bank then, they would seem to be equally within its control when the deposits are made after the debt has matured. It has been said by an able and often quoted text-writer that "if the bank at the maturity of a note held by it holds funds that, by a scratch of a pen, it could apply upon the note, thus securing itself, it is difficult to see why neglecting so easy a means of security is not as improper as giving up collateral designated for the purpose of securing the note." 2 Morse on Banks and Banking, 956. This argument applies as well to a case in which the opportunity to protect the surety, "by a scratch of a pen," occurs after the maturity of the note as it does to a case in which such opportunity pre-

sents itself at the time when the note falls due. We do not overlook the fact that it has been said, in a case wherein the party claiming to have been discharged was an indorser, that the liability of an indorser becomes fixed when the note, at maturity, is protested for non-payment. But we do not understand that this strips him of the right to be protected, as a surety, against subsequent acts of the creditor which will injure him, or increase his risk. "It is true that there is a distinction between an ordinary indorser and one who is merely a surety, but a contract of suretyship is necessarily included in every unqualified indorsement of a negotiable instrument . . and the principle which protects sureties from any act of the creditor tending to injure the surety, or increase his risk, is applicable as well to indorsers for value as those whose indorsement is for accommodation merely." *Tanner* v. *Gude,* 100 *Ga.* 158-159. So we fail to see why, even in cases involving the rights of an ordinary indorser, there should be a distinction made based upon the mere question as to the time when the bank had the opportunity to protect the surety by subjecting the deposit account of the principal to the payment of the debt. In our opinion, as we have already indicated, there is a direct conflict in principle between the decisions which hold the surety discharged because the bank at the maturity of the note could have protected him by recourse to the deposit of the principal, and failed to do so, and those which hold that the surety is not discharged by the failure of the bank to exercise its right of set-off against the deposits made subsequently to the maturity of the debt; and we think that the better view of the question is that taken in the latter class of cases.

One ground upon which it has been held that a surety upon a note held by a bank is discharged, if, at the maturity thereof, the bank holds on general deposit for the maker a sum sufficient to pay the note, which it permits to be checked out, is that the bank has a lien upon such deposit of the principal debtor to the extent of its claim against him, and ought, in justice to the surety, to enforce it for his protection. Zane on Banks and Banking, § 114; Sheldon on Subrogation, § 124; and cases cited. We do not see how a bank has a lien upon the general deposit account of its debtor to secure his indebtedness to it. When money is deposited in a bank upon general deposit account, it ceases to be the money of the depositor and becomes the absolute property of the bank, and

the relation between the bank and the depositor is that of debtor and creditor, the bank becoming indebted to the depositor in the amount of his deposit, and the debt being payable when, and in such amounts thereof, as the creditor may, by written order or check, demand. A general deposit of money in a bank "is a loan, and transforms the funds from ready money into a chose in action." *Ricks* v. *Broyles, 78 Ga.* 610; Morse on Banks and Banking, 30, 42; Newmark on Bank Deposits, § 105. As the bank holds no funds or property of the depositor, but is merely his debtor in a given amount, how can it be said the bank has a lien upon the deposit to secure its claim against the depositor? Let us state this lien proposition. Smith owes the bank and the bank owes him, each has a chose in action against the other, and to secure the payment of its claim against Smith, the bank has a lien upon the chose in action which he holds against it. We fail to see how one can hold a lien upon his own indebtedness to another, upon a mere chose in action which the other holds against him. Again, if a bank which holds a note against one of its depositors has a lien upon his deposit account, to secure the payment of the note, it would seem that the bank, before the maturity of the note, would have the right to assert this lien against deposits made with it by him prior to the maturity of the debt, by refusing to honor his checks whenever by so honoring the amount of his deposit account would be reduced to a sum less than the amount of the note. We do not think any court would hold that the bank could do this. And yet this would seem to be the logical effect of holding that the bank has a lien upon the deposit account; and the only escape from this conclusion would be to hold that the lien of the bank comes into existence only at the moment that the debt against the depositor matures. Besides, if the theory of a lien applies to a deposit on hand when the debt falls due, why does it not also apply to a deposit subsequently made, as in either case the right of the bank to set off what the depositor owes it against the deposit exists? The Kentucky Court of Appeals, in Pursifull v. Pineville Banking Co., supra, recognized that the discharge of a surety in a case like this could not be placed upon the release by the bank of a lien which it had to secure the debt. In the opinion in that case it is said: "Now, while it is true that the bank in this case had not, strictly speaking, a lien upon any money or property belonging to Hurst,

and while the surety could not, perhaps, by paying this debt to the bank, have become entitled to demand of it repayment out of Hurst's deposit, which is laid down by some of the authorities as the true test, yet it seems to us that this bank by the voluntary surrender to the principal of money more than sufficient to pay this debt, and which, it is conceded, it had a right to apply to that purpose, has been equally reckless of the interests of this surety as though it had surrendered a security on which it had a specific lien." When a bank which holds a note against one of its depositors charges it up against the depositor on his deposit account and marks the note paid, it is not availing itself of any lien against funds of the depositor in its hands, but is availing itself of a right, which has been pretty generally recognized, to set off against its indebtedness to the depositor the amount of his indebtedness to it. In our opinion, this is a right which it may exercise for its own protection, but which it is not bound to exercise for the protection of a surety upon the note, unless it knows that the depositor-principal is insolvent, in which case it seems that the bank would be bound to protect the surety. *Walsh* v. *Colquitt,* 64 *Ga.* 740. If the bank, in the absence of knowledge of insolvency on the part of the depositor, fails to exercise its right of set-off, and allows him to check out his deposit, we do not see how a surety upon the note of the depositor has been legally injured, or exposed to greater liability, or has had his risk increased. Its non-exercise of its right of set-off interferes with no right of subrogation which the surety would have upon payment of the note; for by paying the note he could not, under the right of subrogation, reach the indebtedness of the bank to the principal. The bank, by merely owing the principal upon the note, held neither collateral nor lien to secure the note, and nothing whatever to which the surety, upon payment of the note, could, by subrogation, resort for the purpose of reimbursement. How then can it be said that the surety has been, in a legal sense, injured by the conduct of the bank in paying the debt which it owed the principal, instead of setting off against it the debt which he owed it?

In *Hollingsworth* v. *Tanner,* 44 *Ga.* 11, it was held that although the owner of judgments against a principal and surety had, while owning the judgments, employed the principal to perform certain services for him at a stipulated price, and when the services were rendered had paid the principal therefor, and still held the judg-

ments unsettled, the surety was not discharged. In the opinion Chief Justice Lochrane said: "The decision of this court in 3 *Kelly, Curren* v. *Colbert,* 239, is invoked to sustain the doctrine, that any act of the holder which increases the risk of the surety will discharge the surety. That case was the dismission of a levy and the release of the property of the principal, levied on by a creditor having a judgment against the principal and surety, without privity of the surety. But the doctrine is clearly recognized *as settled* in the books that *mere indulgence,* unless given upon a new and distinct consideration, or unless given under such a binding obligation as precludes the creditor from pursuing his remedy on the debt, will not discharge the surety." In *Echols* v. *Head,* 68 *Ga.* 152, it was held, that, as there is no vendor's lien in Georgia and the right to attach for purchase-money is a privilege and not a lien, the fact that the vendor of a horse, for the purchase-money of which he had taken a note with personal security thereon, subsequently bought the horse back from the vendee, and thereby destroyed his right to attach the property for the purchase-money, did not discharge the surety on the note. It will be observed that the ruling in each of these Georgia cases is opposed to the idea that a creditor is bound, for the protection of a surety, to avail himself of any and every means which he may have for the protection of himself. He is not bound to preserve his right to set off a debt due him, whereon there is a surety, against a debt which he may owe his principal debtor, in order to protect the interests of the surety. Nor is he bound, for the sake of the surety, to preserve a remedy which he may have against the principal debtor, of which the surety could not, upon payment of the debt, avail himself. In *Lumsden* v. *Leonard,* 55 *Ga.* 374, it was held, that the neglect of a judgment creditor for four years to levy upon real estate sold by the principal debtor to a purchaser, who held possession until the land was discharged from the lien of the judgment, did not discharge the surety, though such real estate was sufficient to satisfy the judgment, there being no proof, or offer to prove, that the judgment creditor was notified in writing to levy, and no tender of expenses by the surety. This ruling was placed upon the ground that "Mere non-action by the creditor will not release the surety, unless such non-action makes unproductive some collateral security, such as a mortgage, or is based upon a consideration paid by the principal

debtor to the creditor, or he is notified under the statute to collect
the debt." In the opinion, Jackson, J., said: "On a careful ex-
amination of our own decisions since the organization of this court,
and of the law in general, upon this subject, we conclude that the
true doctrine to be gathered from all the sources at our command
is this (and it is embodied in our Code) : Some *act* must be done
by the creditor, either before or after judgment, which injures the
surety in some way; mere failure or negligence on the part of the
creditor will not relieve the surety. And the exceptions to this
general rule will be found where the creditor omits to do something
by which collateral security in his hands is made unproductive, or
where he is notified under the statute to proceed, and he fails or re-
fuses; and if the letter of the statute on the subject of notice be
extended to embrace proceedings after judgment, we think the
security, in addition to the notice, should at least indemnify the
creditor against the expenses of litigation."

In Glazier *v.* Douglass, 32 Conn. 393, "The plaintiff held a
promissory note [payable at a bank] endorsed by the defendant for
the accommodation of the makers, which had been protested for
non-payment, the makers having become and still remaining in-
solvent. A firm of which the plaintiff was a member owed the
makers a larger sum than the amount of the note, against which,
if sued, they could by statute have set off the claim held by the
plaintiff. Without requiring such application the firm paid the
makers the amount owed them, with full knowledge on the part
of the plaintiff of all the facts." It was held, "in an action brought
against the defendant on his endorsement, that he was not dis-
charged by the neglect of the plaintiff to secure an application of
the debt of the firm to the payment of the note." This ruling
was based upon the principle that "The security, the discharge of
which by a creditor will release a surety, must be a mortgage, pledge,
or lien—some right to or interest in property which the creditor
can hold in trust for the surety and to which the surety if he pay
the debt can be subrogated; and the *right* to apply or hold must
exist and be absolute." In the opinion the court said: "By a
series of decisions adopting the equitable principles of the civil
law, there have been annexed to the undertaking of a surety, in a
case like this, three conditions; and if either is broken by the cred-
itor, that undertaking becomes inoperative, and the surety is dis-

charged. The first is that the creditor shall present the note to the maker at maturity, and if dishonored use due diligence in giving notice to the surety. The second is that no obligatory extension of time of payment shall be given which will preclude the surety, if he pay the note to the creditor, from enforcing immediate payment by compulsory process from the principal debtor. And the third is, that the creditor shall apply in payment of the debt, or hold in trust for the benefit of the surety, all securities which he may receive or procure for that purpose by contract or operation of law, so that if compelled to discharge the debt the surety may be subrogated to them. . . But although in some special cases *in equity* the creditor may be compelled to proceed against the maker, the law annexes no condition requiring the creditor to proceed against the principal debtor, or do any act (whatever his opportunity or however much it may subserve the interest of the surety) to procure security or enforce payment from the principal; and he may remain entirely passive and rely on the undertaking of the surety, whether the principal be solvent or insolvent. In respect to what shall be deemed a security within the meaning of the condition, there has been some contrariety of decision. The better opinion is that it must be a mortgage, pledge or lien—some *right* to or interest in property which the creditor can hold in trust for the surety, and to which the surety if he pay the debt can be subrogated, and the *right* to apply or hold must exist and be absolute. . . The contrariety of decision spoken of has been chiefly in respect to liens obtained by process or operation of law. Judgment liens, made such by the local law, are assignable, and clearly within the condition. But it has been made a question whether a lien obtained by levy of execution on the goods of the principal debtor can be released or abandoned, and the better opinion now is that it can not be." In Second National Bank *v.* Hill, supra, the bank brought a suit upon a promissory note against Hill, Mote, and Hair. Mote and Hair filed a joint answer, in which they alleged that they signed the note as sureties for Hill, who was the principal therein, which fact was known to the bank at the time that the note was given to it for money borrowed by Hill; that after the maturity of the note Hill made general deposits in the bank in sums exceeding the amount due on the note, and after the note became due the bank had of the funds of Hill on deposit more

than enough to pay the note, and, except as to a small amount which was stated, it failed to apply any of the funds of Hill which it held on deposit to the payment of the note, and suffered him to check out his funds, although prior to the maturity of the note Hill "had consented and directed the [bank] to allow and pay said note, interest, etc., thereon at any time after its maturity, out of his deposits in said bank, if he should have any such funds in said bank to pay the same or any part thereof." The plaintiff demurred to this answer, and the trial court overruled the demurrer, which ruling was reversed by the Supreme Court of the State. In the opinion the court said: "Though the funds deposited with the plaintiff might have been applied by it to the payment of the note in suit, the bank did not hold the funds, in any sense, in trust for the sureties of Hill on the note. Had Mote and Hair, as such sureties, paid to the appellant the note in suit, they could not, had the bank at the time been indebted to Hill on his deposit account in a sum exceeding the amount paid on the note, have required the bank to apply such indebtedness for their benefit, or to reimburse them for the money paid by them on the note for Hill's benefit. They could not have required this of the bank, for the obvious reason that they could not have, under the circumstances, any right to, or interest in, the debt due from the bank to Hill. . . The question is not what a creditor might or could have done, but was he obliged to do this or discharge the surety? The creditor might sue the principal debtor as soon as the debt matured, and thereby save the surety from future hazard, but he is not obliged to sue. He may delay the collection of his debt until the principal debtor fails, without discharging the surety. To hold that the bank was obliged to apply deposits made by Hill to the payment of the note would be to compel him to collect his debt, though none of the parties bound to pay it had requested him to do so." In the case with which we are dealing there was a request by the surety for the creditor to collect the debt; but we know of no request which compels the creditor to proceed to do this, except the written notice from the surety to the creditor to sue, provided for by our statute.

In Voss *v.* German American Bank, supra, the Supreme Court of Illinois said: "The note appears to have been made for Michelson's benefit, and Voss to have been only a surety, as between himself and Michelson, and, as Michelson is shown to have had funds

on deposit in the bank, from time to time, after the maturity of the note, and before the bringing of the suit, to an amount exceeding that of the note, it is insisted that the bank was bound to apply such funds to the payment of the note, and that not having done so, Voss is discharged. And the case of McDowell *v.* Bank of Wilmington and Brandywine, 1 Harrington, 369, and Law *v.* East India Co., 4 Vesey, 824, are cited as authorities that, under such circumstances, a surety will be discharged. Without remark upon or consideration of these authorities, we do not regard them as having application to the case in hand. We do not recognize, in such a case as is here presented, the existence of any such obligation as the one which is asserted by appellant's counsel." In National Mahaiwe Bank *v.* Peck, 127 Mass. 300-301, Chief Justice Gray well said: "Money deposited in a bank does not remain the property of the depositor, upon which the bank has a lien only; but it becomes the absolute property of the bank, and the bank is merely the debtor of the depositor in an equal amount. [Citing cases.] So long as the balance of account to the credit of the depositor exceeds the amount of any debts due and payable by him to the bank, the bank is bound to honor his checks, and liable to an action by him if it does not. When he owes the bank independent debts, already due and payable, the bank has the right to apply the balance of his general account to the satisfaction of any such debts of his. But if the bank, instead of so applying the balance, sees fit to allow him to draw it out, neither the depositor nor any other person can afterwards insist that it should have been so applied. The bank, being the absolute owner of the money deposited, and being a mere debtor to the depositor for his balance of account, holds no property in which the depositor has any title or right of which a surety on an independent debt from him to the bank can avail himself by way of subrogation, as in Baker *v.* Briggs, 8 Pick. 122, American Bank *v.* Baker, 4 Met. 164, cited for the defendant. The right of the bank to apply the balance of account to the satisfaction of such a debt is rather in the nature of a set-off, or of an application of payments, neither of which, in the absence of express agreement or appropriation, will be required by the law to be so made as to benefit the surety." We do not think that what the plea alleged occurred between the president of the bank and the surety renders a different principle applicable in the present case.

If the bank was, as we have seen, under no legal duty to the surety to set off the amount which the principal upon the notes owed it against the amount which it owed him upon his general deposit account, it was not bound to do this upon a mere request or demand of the surety that this should be done. It is provided by statute in this State that a surety may, at any time after the debt on which he is liable becomes due, give notice to the creditor to proceed to collect the same out of the principal, and that if the creditor fails or refuses to commence action for the space of three months after such notice, the surety will be discharged. Civil Code, § 2974. This is the only notice from a surety to the creditor holding the obligation for which our law provides. It is true that there are decisions which hold that where a surety has requested the creditor to take action for the collection of the debt, which, if taken, would result in its collection from the property of the principal, and the creditor assures the surety that he will do so, and thus induces the surety to forego any means of indemnity or protection to which he might otherwise have resorted, and the creditor fails to redeem his promise, whereby the surety is injured, the surety is released. *Bullard* v. *Ledbetter, 59 Ga.* 109, is a case of this character. But in such cases it is not the mere failure of the creditor to comply with the verbal request of the surety, but his failure to comply with a promise which he made to the surety, and upon which the latter relied to his injury, which discharges the surety. Here there was no promise by the creditor which put the surety to sleep, but, on the contrary, the surety knew that the creditor did not intend to comply with his demand. Of course the mere indulgence, without consideration, of the principal debtor did not discharge the surety. The decision rendered in *Walsh* v. *Colquitt,* supra, might have required a different conclusion in the present case, if the plea here had alleged that at the time the bank allowed Lipscomb to check out the whole of his deposit he was insolvent and the bank knew it, or that the bank, in addition to knowing the use for which he checked out the money, knew that by so using it he would be rendered insolvent.

The judgment of the court, sustaining the motion to strike the plea, was not erroneous, and as this left the defendant without any issuable defense filed under oath, it was proper for the court

to render judgment in favor of the plaintiff for the amount due upon the notes.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*