PULLMAN PALACE CAR COMPANY V. CLARKE P. WOODS.

FILED MAY 17, 1906. No. 14,236.

1. **Evidence of Value:** HARMLESS ERROR. Where both competent and incompetent evidence is received as to the value of property, the latter placing the valuation no higher than the former, and neither is contradicted, and the value as found by the jury is less than that warranted by the competent testimony, the admission of the incompetent evidence is harmless error.

2. **Harmless Error.** Where a litigant relies upon the common law of a sister state, he is not prejudiced by the rejection of evidence to prove such law, where the court embodies such law in an instruction to the jury as a part of the law of the case.

3. **Evidence** examined, and *held* sufficient to sustain the verdict.

ERROR to the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Affirmed.*

*F. T. Ransom* and *Robert Ryan,* for plaintiff in error.

*S. B. Pound, contra.*

ALBERT, C.

The plaintiff brought this action against the Pullman Palace Car Company to recover for the loss of certain

jewelry and money, which she alleges were stolen from her person while asleep in a berth on one of the defendant's cars in which she was traveling as a passenger in the state of Pennsylvania. She alleges that the loss was due to the negligent omission of the defendant to take due precautions to protect the property of its passengers from theft. The loss of the property and the amount of damages, if any loss occurred, are put in issue by the answer, which also contains the following allegations: "Defendant further alleges that the contract between the plaintiff and the defendant, whereby defendant was to furnish the plaintiff with a berth and accommodations in the car mentioned in the petition, was made in the state of Pennsylvania, and is to be construed according to the laws of that state, and the rights, duties and liabilities of the parties to each other under such contract are to be governed and determined by the laws of the state of Pennsylvania, and that under the laws of the state of Pennsylvania the defendant's liability to the plaintiff for the alleged loss of her jewelry depends upon whether the defendant used due care and caution to guard against said property of plaintiff being stolen or lost while she occupied the said berth, and defendant alleges that it used due care and caution, and therefore is not liable to plaintiff in this action." The jury found for the plaintiff and awarded $507.15 damages. The defendant brings error.

The principal question now presented is whether the verdict is sustained by sufficient evidence; the defendant contending that the evidence is wholly insufficient to sustain the finding that the jewelry and money were stolen from the plaintiff as alleged in her petition. The testimony of the plaintiff as to the alleged loss is to the effect that she and her husband were passengers on one of the defendant's cars on the night of the alleged loss, and occupied the same berth. Among other articles of personal adornment she carried with her two solitaire diamond rings, the stone in one weighing $1\frac{1}{4}$ carats, in the other 1 carat; a turquoise ring, with a circle of diamonds; a ring

set with an emerald, surrounded by a circle consisting of ten small diamonds, and a ring containing three large opals. Before retiring she placed the five rings and a $5 bill in a small bag at the end of a long strip of chamois skin, which was wound around it and securely tied, and pinned the bag to the inside of her undervest, next to her person, by means of two belt pins about 2½ inches in length. The undervest was low-cut, and the chamois-skin bag was pinned near the top of the vest. Over this vest she wore a nightgown, which was also low-cut in front like the undervest. She retired about 10 o'clock. Her husband retired about midnight. He was ill and feverish, and after he had been in the berth about an hour wanted some water, and rang the bell repeatedly for the porter, but could get no response. The conductor, who was produced as a witness on behalf of the defendant, testified that all the bells were in good working order, and, if rung, would have been heard by himself or the porter, if in the car. The plaintiff further testified that as her husband was unable to raise the conductor or porter by ringing the bell, she got up, went to the end of the car, procured water for him there, and returned with it to the berth. She also testified, that, upon leaving the berth, she looked up and down the aisle, that there was no person in sight, and that she saw no one in the aisle or in the car, either coming or going. When she had returned with the water, and again retired, the chamois-skin bag with the jewelry was still on her person, and the curtains of the berth were fastened. Her husband testified that when he retired, which was about midnight, there was none of the employees of the company in sight. He got up in the morning sometime before his wife, but did not touch the curtains at the head of the berth. The wife testified that when she got up, shortly afterwards, the curtains at the head of the bed were unbuttoned, and that the chamois-skin bag containing the rings and money had been removed from her person. She immediately reported her loss to the defendant's employees, but the property was never

recovered. That the plaintiff had the property in her possession when she retired, that she had secured it in the manner stated by her in her testimony, that it was still on her person after procuring the water for her husband, that afterwards, and before she arose in the morning, it was removed from her person and was never recovered, are facts which stand uncontradicted by any direct evidence. Taking into account the way the property was carried and secured, that it was designedly removed by some human agency, and not lost by mere accident, is, to say the least, a reasonable inference.

But the defendant contends that the plaintiff's story of the loss is so improbable as to be unworthy of credit. It is true the plaintiff had secured her property in such a way as to render its removal without her knowledge extremely difficult, and that the thief attempting it would take great risk of being detected in the act. But we are not prepared to say that her story is so inherently improbable as to warrant this court in holding, as a matter of law, that it should be utterly disregarded. She had slept none when her husband retired about midnight. Owing to his illness she was awake for some time afterwards. The evidence shows that she was accustomed to travel and to sleeping in sleeping cars. Hence we should expect that when she did get to sleep on the night in question she slept soundly. She was a married woman, sleeping by the side of her husband. Consequently it is not surprising that the slight touch necessary to remove the property from her person failed to arouse her from her sleep. Besides, instances are not wanting of larceny from the person of property as safely secured and guarded as was this. In *Pullman Palace Car Co. v. Hunter,* 107 Ky. 519, 47 L. R. A. 286, the plaintiff's claim that three rings were stolen from her finger while she slept was credited. In *Lewis v. New York Sleeping Car Co.,* 143 Mass. 267, money sewed up in the pocket of a vest, which had been rolled up and placed under the sleeper's head, was stolen by cutting a slit in the vest and drawing out the purse, leaving the vest in its place. In

*Pullman Palace Car Co. v. Martin*, 95 Ga. 314, 29 L. R. A. 498, jewelry was stolen from a satchel which had been placed on the inside of the berth, while the owner slept on the outside. In the light of everyday experience, it would be rash to attempt to set a limit upon the dexterity of the professional thief. Counsel urge upon our attention the risk a thief would incur in attempting to extract the bag of jewelry from where the plaintiff in this case had placed it, but, as their opponents justly observe, if thefts were confined merely to cases where no risk is involved larceny would be a thing of the past. It is true there are some circumstances shown in evidence that might be held to discredit to some extent the testimony of the plaintiff and her husband. But both of them testified in open court. The jury had an opportunity to observe their conduct and demeanor on the stand, their apparent candor and fairness or the lack of these qualities, and in many ways were in a far better position than we to judge of the weight to be given to their account of the occurrence. With these advantages for weighing the evidence, they found the plaintiff's account of her loss to be true, and we do not think their finding in that regard should be disturbed.

It is also contended that the evidence is insufficient to sustain a finding that plaintiff's loss was occasioned by any negligent act on the part of the defendant. The measure of defendant's duty to the plaintiff as one of its passengers is to be found in the instruction hereinafter set out which stands as the law of this case. Tested by that instruction we think the evidence is sufficient to sustain a finding of negligence on the part of the defendant. In the first place, if the defendant had exercised the degree of care required by that instruction it is hardly possible that the loss could have occurred. In the next place, the evidence of the plaintiff's husband is to the effect that none of the employees of the defendant was in sight when he went to his berth at midnight. The evidence of both the plaintiff and her husband is that he repeatedly rang the bell, but obtained no response. According to the conductor's testi-

mony, if the porter or himself had been in the car at the time they would have heard the bell. This would indicate that the conductor and porter were absent from the car when the bell was rung. The testimony of the plaintiff further shows that, when she got up from the berth about 1 o'clock in the night to get water for her husband, she saw no one. Taking into account the testimony which we have just recounted, we think the jury were warranted in drawing the inference that the defendant failed to maintain a careful and continual watch over the interior of the cars while the berths were occupied by sleepers. To that extent, under the instruction referred to, it failed of its duty and was negligent, and the inference that plaintiff's loss was occasioned by such negligence is by no means unreasonable.

Complaint is made that a considerable amount of the testimony adduced on behalf of the plaintiff as to the value of the stolen property was incompetent. We are disposed to think there is some foundation for this complaint. But along with the incompetent evidence upon this point is a considerable amount that is competent, and which does not appear to have been contradicted. The incompetent evidence, if anything, places a little lower valuation on the property than the competent, and both place it higher than found by the jury. That being true, had all the incompetent evidence been excluded, the uncontradicted evidence would still have entitled the plaintiff to a verdict for a larger amount than the jury awarded. We are able therefore to see no way in which the defendant was prejudiced by the reception of the incompetent evidence.

The defendant offered in evidence a case decided by the supreme court of Pennsylvania, entitled *Pullman Car Co. v. Gardner,* 3 Penny. (Pa.) 78, and now complains that its offer was rejected. This evidence was offered in support of those allegations of the answer in regard to the laws of Pennsylvania, and as showing the degree of care required by sleeping car companies for the safety of their passengers

in that state. It was offered upon the theory that, as the loss occurred in the state of Pennsylvania, the law of that state, rather than of this, would govern as to the defendant's liability. In the case offered in evidence the court, among other things, said: Conceding that the company is not liable in this action as an inn-keeper or common carrier, yet a reasonable and proper degree of care is imposed on the company. Whether it did exercise that degree of care under the circumstances was for the jury. The main object of taking passage in such a car is to permit the passenger to sleep. While in that helpless condition, a duty rests on the company to provide reasonable care and precaution against the valuables of a passenger being stolen from his bed or from the clothes on his person. This is not the case of a robbery by force and violence, but by stealthy larceny. Unless a watchman be kept constantly in view of the center aisle of the car, larceny from a sleeping passenger may be committed without the thief being detected in the act."

But in the case at bar the court instructed the jury as to the degree of care which the defendant owed to the plaintiff as one of its passengers, as follows: "It is the duty of a sleeping car company to use reasonable care to guard the baggage and personal effects which passengers have taken with them and retained in their custody in defendant's sleeping cars, and if, through a failure of defendant company to use such care, the baggage or property of such passenger is stolen, without any fault or negligence upon such passenger's part, then the company is liable therefor; and you are instructed that such reasonable care involves the duty on the part of the defendant company to maintain a careful and continual watch by a competent and efficient person for the safety of the baggage or property of its passengers while they are asleep in its cars at night." No complaint is made of this instruction by either party, and we must therefore accept it as the law of this case, and are not required to express any opinion as to its accuracy. A comparison of this instruction with

the rule announced in the Pennsylvania case shows, we think, that quite as high a degree of care is exacted in that state as by the instruction which stands as the law of this case, and that what the defendant sought to prove by this evidence was given to the jury as a matter of law by the court. It is quite clear therefore that the defendant was not prejudiced by the exclusion of the evidence, and equally clear, we think, that, in view of the theory upon which the cause was submitted, the evidence was properly excluded.

The defendant also complains of the refusal of the court to give certain instructions tendered by it. The ground covered by the instructions tendered is adequately covered by the instructions given by the court on its own motion; consequently, the refusal to give those tendered was not error.

We find nothing in the record that would warrant a reversal of the judgment in this case, and we therefore recommend that it be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.