DAVID BERLINER, APPELLEE, V. DIRECTOR GENERAL OF RAIL-
ROADS, APPELLEE: UNION STOCK YARDS COMPANY, AP-
PELLANT.

FILED OCTOBER 14, 1921.   No. 21619.

1. **Carriers:** SHIPMENT OF LIVE STOCK: DELAY. Where live stock is
   tendered to a carrier for shipment and the shipment is received
   and accepted and transportation begun, and where the carrier,
   through its default, fails to make connections with another
   carrier, and returns the cattle to its pens at the originating
   point of shipment, to hold them until the next day, for the pur-
   pose of delivery to the other carrier, then, the fact that it notifies
   the shipper of its failure to ship and informs him that the stock
   will be forwarded the following day, if agreeable, does not alone
   amount to a complete breach and a termination by the parties
   of the original shipping agreement and constitute a redelivery
   of the stock to the shipper, so as to give rise to a new agree-
   ment for shipment to be made on the following day, but con-
   stitutes only a delay in transportation under the original ship-
   ping agreement.

2. ———: ———: ———: MEASURE OF DAMAGES. The measure of
   damages in such a case is the difference between the value of the
   live stock at the time and place they ought to have been delivered
   and their value at the time of their actual delivery, or at the first
   available market after they were actually delivered.

3. **Appeal:** ADMISSION OF EXPERT TESTIMONY: PREJUDICIAL ERROR.
   In an action to recover for damages sustained during delay in
   transportation of live stock, where the testimony of plaintiff and
   defendant, on the question of the amount of damages, is in sharp
   conflict and evenly balanced, the improper admission of the testi-
   mony of one offered as an expert, purporting to show that the
   damages were in the amount contended for by plaintiff, *held*
   prejudicial error.

4. **Evidence:** EXPERT TESTIMONY. It is error to allow a witness,
   offered as an expert, to give his conclusions on the values of live
   stock, bearing upon the measure of damages, where the hypotheti-
   cal question put to him does not contain sufficient facts, based
   upon some evidence introduced, to fairly reflect an issue tendered
   by the case, and to furnish a sufficient premise upon which to
   base an intelligent conclusion.

APPEAL from the district court for Douglas county:

CHARLES LESLIE, JUDGE.    *Affirmed in part, and reversed in part.*

*Brown, Baxter & Van Dusen*, for appellant.

*Byron Clark, Jesse L. Root, J. W. Weingarten* and *Walter W. Hoye*, contra.

Heard before MORRISSEY, C.J., ALDRICH, DAY, DEAN, FLANSBURG, LETTON and ROSE, JJ.

FLANSBURG, J.

This was an action brought by the plaintiff against the Union Stock Yards Company, of South Omaha, and the Chicago, Burlington & Quincy Railroad Company, to recover for damages caused by an alleged unreasonable delay in transportation of live stock. Verdict and judgment was in favor of the plaintiff and against the Union Stock Yards Company, but against the plaintiff and in favor of the railroad company. The action as to the railroad company has been dismissed. The defendant Union Stock Yards Company appeals.

The defendant urges two grounds for reversal: (1) That the court erroneously instructed the jury as to the measure of damages; and (2) improperly admitted certain testimony.

The jury were instructed that the measure of damages would be the difference between the value of the cattle at St. Joseph at the time they should, without any unreasonable delay, have been delivered, and their value upon the first available market after delivery. Defendant concedes that such measure of damages is the correct one in cases of a delay in transportation, but contends that this is not a case of delay in transportation, but one of a complete failure to perform a contract, or undertaking of carriage, and, in fact, a refusal to carry, and that the measure of damages should have been the difference between the market value of the stock at South Omaha at the time of breach and the market value at St. Joseph at the time the stock should have arrived.

The testimony relative to that question shows that the plaintiff, a dealer in live stock, on October 10, 1918, was holding, in the yards of the defendant company at South Omaha, two car-loads of beef cattle. Plaintiff had been unable to make a desirable sale of the cattle in Omaha and decided to ship to St. Joseph, Missouri. In order to conceal his identity as owner and shipper of the stock, he acted through the live stock commission firm of Dono-hue & Randall, of South Omaha, and used the name of Hylen, book-keeper of that firm, as shipper and consignor. The stock was tendered to the defendant stock yards company for shipment to St. Joseph, on October 10, 1918. The defendant accepted the shipment in ample time, under its rules, to have allowed delivery to the railroad for the train scheduled to leave at 8:40 that evening. Defendant, however, through some fault or neglect, did not get the cattle loaded and the cars switched upon the proper tracks until between 9 and 10 o'clock, and after this train had departed. The cattle were left in the cars until 3:10 a. m., when they were unloaded by the defendant and returned to the pens of the stock yards company.

On the following morning the agent of the defendant Union Stock Yards Company telephoned to Hylen, whom he properly believed to be the owner and shipper of the stock, that defendant had failed to load the stock in time for shipment on the train of the previous evening, and informed Hylen that defendant "would see that the stock were fed and watered, and that they would go out that night." To this Hylen said, "That was all right." The uncontradicted testimony is that Hylen gave no instructions as to shipment, disposal, care or custody of the stock, nor did he agree to assume to take charge of it The defendant did not, on the other hard, disclaim any obligation to continue to care for the stock, or to continue in the complete performance of its agreement, already partially undertaken. The telephone conversation outlined above seems to have been all that was said upon

the subject.

During that day the cattle were placed in the yards belonging to the defendant company, customarily used by the commission firm above mentioned, but it does not appear that the commission firm, nor that Hylen, was given any notice as to the exact disposal of the stock. The exclusive control of the defendant company over the stock during that day was in no way interfered with nor interrupted.

We do not think these facts bear out the contention of the defendant that the obligation, arising out of the agreement to ship, made on October 10, had been terminated by the telephone conversation on the 11th, and that a redelivery of the stock had been tendered and accepted by the shipper, and that the shipment of the stock on October 11 became a new shipment. On the other hand, it appears that the stock had been, on October 10, tendered for shipment; that it had been accepted for shipment by defendant, and that transportation had begun; that, through the failure of the defendant, a delay of one day had been caused, and that the defendant had notified the shipper of that delay.

Though the plaintiff may be said to have had an opportunity to retake the stock and sell it upon the Omaha market, he was not bound to do so. He had the right to expect and demand a complete performance of his agreement, which had been undertaken by the defendant, and to require an entire transportation. The conversation between the parties would indicate that they construed their relation as a continuing one, and that the occasion was considered by them as a mere delay in transportation, and not as a complete breach of the agreement to transport and a redelivery to the shipper of the live stock agreed to be transported. The shipment, furthermore, went out on the original billing made on the previous day. Under the facts stated, it seems clear to us to be a case of delay in transportation merely. The defendant knew that the stock was being shipped to St. Joseph, to be tendered on

the market there, and the plaintiff, by reason of the unreasonable delay caused by the defendant, was entitled to those damages which naturally followed, and as would fairly and reasonably be supposed to have been in contemplation of the parties when the shipping contract was made.

The court's instruction, therefore, that the plaintiff was entitled to recover the difference between what the cattle would have sold for on the market at St. Joseph, had there been no unreasonable delay, and what such cattle would have sold for on the first available market after they actually did arrive, was the proper measure of damages.

Even where a shipping contract has been entered upon between the parties and where there has been a failure to accept and receive the shipment according to the agreement, there are decisions holding that the plaintiff is entitled to recover according to the measure of damages just stated. *Chicago, B. & Q. R. Co. v. Todd*, 74 Neb. 712; *Levy v. Nevada-California-Oregon R. Co.*, 81 Or. 673, L. R. A., 1917B, 564.

The defendant further contends that certain testimony, offered as that of an expert, of one Pruss, a dealer and shipper of live stock, and given in response to a hypothetical question, should have been excluded.

The question propounded to the witness was as follows: "Assuming, Mr. Pruss, that 47 head of cattle, weighing—western cattle of a class of good to choice—weighing in Omaha on October 8th about 53,590 pounds, were shipped on the 11th, the evening of the 11th day of October, 1918, to South St. Joseph, arriving there on October 12, 1918, being held in the stock yards pens Saturday, Sunday, and were placed on the market Monday morning following, and assuming further that the market for that class of cattle in South St. Joseph on October the 11th, 1918, was $13.50 to $14.75, could you state what the difference in value of such cattle would be on Monday as against Friday?"

The witness was allowed to answer this question and to give his conclusions on value over the objection of the defendant. The question put to the witness called for his opinion as to the depreciation in value of the stock, but was quite incomplete as a hypothetical question, by reason of its failure to inform the witness of the weight of the cattle at the time of delivery to defendant on October 10, the condition of the cattle then as compared to the condition after arrival at St. Joseph, the amount of shrinkage or excess shrinkage which they had sustained, their appearance after their arrival, the condition and circumstances surrounding the shipment, the care and attention they had received, the time consumed in transit and in pens, and the prevailing market prices on October 14, the time of the first available market after arrival at St. Joseph, as compared to the market price at the time the cattle should have arrived on October 11. In other words, the question calls for the comparison in value of the cattle on the St. Joseph market on October 11 and on October 14, without in any way explaining to the witness or giving sufficient data from which the witness could ascertain the difference in weight or condition of the cattle on those two respective dates, and without informing the witness what the market price of cattle was at St. Joseph on one of the dates in question. Of these facts the record does not show that the witness had any knowledge.

The answer of the witness, therefore, to the question appears to have been purely guess and conjecture on his part. His answers to the questions tendered should have been excluded. The testimony of this witness was to the effect that there would have been a depreciation in value of the cattle from October 11 to October 14 of somewhere between $800 and $1,100.

The only other testimony in behalf of the plaintiff, upon the condition and value of the stock, was the testimony of plaintiff himself. His testimony was somewhat uncertain and indefinite, but, in its final analysis, was to the

effect that there had been a shrinkage in weight to the extent of 40 pounds a head between the time, on October 11, when the stock was delivered to the defendant, and the time, on October 14, when the first available market was obtainable after delivery at St. Joseph, and that the normal shrinkage between Omaha and St. Joseph would not have been more than 20 pounds. His testimony, therefore, showed that there had been a loss of 20 pounds a head, due alone to excess shrinkage. He further testified that the hides of the cattle were muddy and that the cattle appeared stale, and that the value of the stock was from $800 to $1,200 less on Monday, October 14, in their then condition, than their value would have been on Friday, October 11, in the condition in which they should have arrived.

In behalf of the defendant, a commission agent at St. Joseph, the one to whom the plaintiff had shipped his stock, who saw the cattle while they were there in the pens at St. Joseph, testified to the effect that the stale appearance of the cattle would have depreciated their value from 25 to 50 cents a hundred pounds only, making a total depreciation on that account of somewhere from $184 to $268, and he further testified that the normal average shrinkage in weight of such cattle, shipped from Omaha to St. Joseph, was in the neighborhood of 40 pounds a head. His testimony, therefore, in direct contradiction to that of the plaintiff, was to the effect that there had been no excess shrinkage in the weight of the cattle, due to delay in transit, and that their depreciation in value, owing to their stale appearance, would be no more than $268.

It is the contention of the plaintiff that, though the testimony of Pruss may have been improperly admitted, it could not have been prejudicial, since the testimony given by the plaintiff stands uncontradicted in the record. In view of the testimony of the plaintiff's commission agent, who testified in behalf of the defendant, as we have above outlined, we are unable to agree with plaintiff that

plaintiff's testimony stands uncontradicted, nor can we come to the conclusion that the wrongful admission of the incompetent testimony, given by the witness Pruss, should, under the ruling in *Pullman Palace Car Co. v. Woods,* 76 Neb. 694, be held to be harmless error.

The vital question in this case, and practically the only question left for the jury to determine as the case finally resolved itself, was the question of the amount of damages—the extent of the depreciation in value, due to excess shrinkage and the cattle becoming stale. With the sharp conflict between the testimony of the plaintiff and that of the commission merchant at St. Joseph, we cannot say that the defendant was not prejudiced by the incompetent testimony of Pruss, purporting to show that the depreciation in value of the stock was from $800 to $1,100. 4 C. J. 997, sec. 2980. The plaintiff's testimony, being that of an interested witness, would no doubt have been given less weight by the jury had it not been corroborated and supported by the testimony of the witness Pruss, testifying as an expert, and who, by his testimony, showed that he had no interest or concern in the outcome of the case.

The judgment of the lower court dismissing the action against the Director General of Railroads is affirmed, but the judgment against the Union Stock Yards Company is reversed and the cause remanded for further proceedings.

AFFIRMED IN PART, AND REVERSED IN PART.